**BURTON et al. v. McGUIRE et al.**
(No. 1357.)

Court of Civil Appeals of Texas. Beaumont.
Oct. 20, 1927.

Rehearing Denied March 7, 1928.

**1. Partition ⟐⟐40—District court, sitting in probate, is without jurisdiction to enter partition decree in guardianship proceedings.**

District court, sitting in probate, is, as against a direct attack, without jurisdiction to enter judgment of partition in guardianship proceedings.

**2. Judgment ⟐⟐518—Suit in trespass to try title, incidentally attacking order of probate court in partition of land, held collateral attack.**

A suit in trespass to try title, contemplating recovery of land, incidentally attacking order of probate court partitioning land, held a collateral and not a direct attack against such judgment of partition, though pleadings by direct allegations plead defects in such judgment of partition, and on such allegations asked affirmative relief against the order, attack constituting part of original pleadings, and bar created by probate judgment being recognized in pleading cause of action.

**3. Judgment ⟐⟐518—"Direct attack" requires that all parties interested in judgment be before court, and final decree, if attack prevails, must destroy judgment.**

In order to constitute a "direct attack" against a judgment, all parties interested in the judgment must be before the court, and final decree, if attack prevails, must absolutely destroy the judgment, and remove it from the record for all purposes, except as to innocent holders.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Direct Attack.]

**4. Judgment ⟐⟐518—Attack only destroying judgment in particular proceeding, instituted for independent purpose, is "collateral attack."**

An attack against a judgment that will only destroy it in a particular proceeding instituted for an independent purpose, leaving its validity in other respects open to question is a collateral, and not a direct, attack.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Collateral Attack.]

**5. Judgment ⟐⟐472—All presumptions will be indulged in favor of county court jurisdiction as are indulged in favor of jurisdiction of other courts.**

County courts are courts of general jurisdiction, and all presumptions will be indulged in favor of their jurisdiction, when exercised over a matter committed to them by law; that will be indulged in favor of jurisdiction of other courts of general jurisdiction.

**6. Partition ⟐⟐36—Judgment of partition, pursuant to report failing to definitely identify proceedings as guardianship, held, as against collateral attack, entered in administration of estate.**

Judgment of partition, pursuant to report of commissioner without anything in the report of commissioners, or in order of confirmation, definitely and clearly identifying proceedings as part of guardianship, to exclusion of administration or as part of administration to exclusion of guardianship, held as against collateral attack, a judgment of partition entered in the administration of estate, and not in guardianship.

**7. Partition ⟐⟐36—District court, sitting in probate, may enter judgment of partition in administration proceedings (Rev. St. 1925, art. 3631).**

Under Rev. St. 1925, art. 3631, district court, sitting in probate, had jurisdiction, in administration of estate of deceased, to enter judgment of partition.

**8. Evidence ⟐⟐82—District court will be presumed to know extent of jurisdiction and to have entered proper judgment.**

The law presumes that the district court, being a court of general jurisdiction, knew extent of such jurisdiction, and entered proper judgment in administration proceeding over which it had jurisdiction for purposes of partition.

**9. Judgment ⟐⟐495(1)—As against collateral attack, it will be presumed in support of judgment that all necessary parties were represented.**

As against collateral attack, on judgment of partition, it will be presumed in support thereof that all necessary parties were made subsequent to the death of the original parties, and before entry of decree.

**10. Partition ⟐⟐36—Failure of judgment of partition to mention heirs of original party held not to affect validity as against collateral attack.**

Failure of judgment of partition to name heirs of one of original parties who were thereafter parties to decree held not to affect its validity as against a collateral attack, since it is conclusively presumed to have properly adjusted claims of all heirs.

**11. Partition ⟐⟐36—Description of land as certain amount in survey as given by commissioners of partition in report, held not fatally defective.**

Description of land as given by commissioners of partition in their report describing it as certain number of acres in survey held not fatally defective; it not appearing on face of description that survey could not have been made as directed by commissioners.

**12. Appeal and error ⟐⟐1029—Plaintiffs in suit involving title, having failed to show title or claim to land, cannot complain on appeal of other errors.**

Plaintiffs in trespass to try title, failing to show title or claim to any of the land in controversy, cannot complain on appeal of other

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

errors based on submission of issues of limitation and refusal to submit issues of conflict between surveys.

**13. Adverse possession ⟨⟩114(1)—Showing of occupancy, use, and enjoyment under claim of title for more than 33 years held complete bar to adverse claim.**

Showing of occupancy, use, and enjoyment of land under claim of title for a period of more than 33 years, fully meeting all essentials of limitation title, *held* a complete bar to adverse claim thereto.

**14. Guardian and ward ⟨⟩13(7)—Order appointing guardian held not absolutely void for failure to state that it would be made permanent, unless contested (Rev. St. 1911, art. 4092).**

Rev. St. 1911, art. 4092, requiring order of court in making appointment of guardian to state that, unless the same is contested at next regular term of court, the same shall be made permanent, *held* directory and not mandatory; hence order failing to contain such recital is not absolutely void.

**15. Statutes ⟨⟩227—Whether statute is mandatory or directory depends on intention of Legislature.**

Whether particular statute is mandatory or directory does not depend on its form, but on intention of Legislature, to be ascertained from consideration of entire act, its nature, and object.

**16. Guardian and ward ⟨⟩13(7)—Failure of order appointing guardian to name appraisers held mere irregularity not affecting validity (Rev. St. 1925, art. 4125).**

Rev. St. 1925, art. 4125, requiring order appointing guardian to name appraisers, *held* directory only, and not mandatory, and failure to name appraisers in order of appointment is mere irregularity not affecting validity of order.

**17. Guardian and ward ⟨⟩107—Attack against guardianship sales as part of original plea in suit in trespass to try title held collateral attack.**

Attack against guardianship sales, pleaded as part of original plea in suit in trespass to try title and as part of prayer for recovery of land, *held* to constitute collateral, and not direct, attack.

**18. Guardian and ward ⟨⟩13(7)—Failure to issue citation on appointment of guardian cannot be raised in subsequent collateral proceeding.**

Failure to issue citation on appointment of guardian cannot be raised in subsequent collateral proceeding by ward seeking cancellation of sales by·guardian.

**19. Guardian and ward ⟨⟩13(7)—Law requiring entry of order appointing temporary guardian on records of court held mandatory (Rev. St. 1925, art. 3302).**

Rev. St. 1925, art. 3302, requiring the entry of order appointing temporary guardian on records of court, is mandatory, and failure to

comply with its provisions renders act of appointment a nullity.

**20. Guardian and ward ⟨⟩13(7)—Entry of order appointing temporary guardian on probate docket held sufficient as against collateral attack (Rev. St. 1925, art. 3302).**

Entry of order appointing temporary guardian on probate court docket *held* sufficient as against collateral attack under Rev. St. 1925, art. 3302, requiring entry of such orders on records of court.

**21. Judgment ⟨⟩495(1)—As against collateral attack, it will be presumed that order entered on probate minutes was entered on its date.**

As against collateral attack, it will be presumed that order on probate minutes was entered on its date, though file mark by clerk showed a different date of filing, since there is no law requiring clerk to file judgment, and a file mark made by him has no force and effect as evidence.

**22. Guardian and ward ⟨⟩13(7)—Lack of order making temporary appointment of guardian permanent did not impair acts of guardian.**

Lack of order making temporary appointment of guardian permanent *held* not to impair acts of such temporary guardian, since continuing force of order of temporary appointment did not depend on entry of permanent order, and, having been duly appointed temporary guardian, all powers inherent in such appointment may be exercised until discharged by proper order.

**23. Guardian and ward ⟨⟩13(7)—That guardian prayed appointment for six months did not limit order of appointment to such period.**

Fact that guardian prayed for appointment as guardian of person and estate of minor for a period of six months from date did not limit order of appointment to such period; there being no law authorizing appointment for six months or any other specific period.

**24. Guardian and ward ⟨⟩13(7)—As against collateral attack, it will be presumed that court, in granting application for appointment as guardian, granted it within jurisdiction.**

In granting application for appointment as guardian, it must be conclusively presumed as against collateral attack that court granted such application within its jurisdiction, and on conditions and terms provided by statute.

**25. Guardian and ward ⟨⟩23—Docket entry, accepting resignation of guardian, held sufficient.**

Docket entry, accepting resignation of guardian, *held* to constitute a sufficient entry of such judgment, having the same force and effect as an entry on the minutes.

**26. Guardian and ward ⟨⟩111—Descriptions in guardian's deeds describing land as undivided interests of certain tracts of survey held sufficient.**

Descriptions in guardian's deeds describing property as undivided interest of certain surveys *held* sufficient description thereof, in view

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of fact that interest had been by decrees of partition defined and located.

**27. Guardian and ward &#9096;|||—Description as "undivided 1.3 interest" instead of "undivided one-third interest" held not to invalidate guardian's deed.**

Description in guardian's deed as an "undivided 1.3 interest". instead of an "undivided one-third interest" *held* not to invalidate deed, in view of fact that use of such expression was a manifest error, and when construed in light of entire record, whole interest of ward clearly being involved.

**28. Evidence &#9096;&#8680;353(2)—Deeds executed by lawfully appointed guardians held admissible in subsequent suit involving validity.** |

Guardian's deeds, executed by lawfully appointed guardians of minors, *held* properly admitted in subsequent suit in trespass to try title involving validity of such deeds.

Appeal from District Court, Orange County; V. H. Stark, Judge.

Action by F. A. Burton and others against A. F. McGuire and others, wherein certain parties intervened. Judgment for defendants, and F. A. Burton and others appeal. Affirmed.

Dies, Stephenson & Dies, of Orange, for appellants.

Howth, Adams & Hart, W. W. Cruse, and C. A. Toler, all of Beaumont, T. L. Foster, of Dallas, and Holland & Holland, Adams & Bruce, A. J. Schnitzel, and H. M. Kinard, all of Orange, for appellees.

WALKER, J. The record in this case is so immense, the parties so numerous, the propositions for reversal so many, that we can give only in the barest outline its nature and result. It was instituted by appellants, who below were the plaintiffs and interveners, against appellees, who below were the defendants, to recover adjoining portions of the Bradley Garner, Aaron Nelson, and S. M. Luce, adjoining surveys in Orange county, Tex. The Bradley Garner, the senior survey, lies immediately north of the Aaron Nelson. The S. M. Luce, the junior survey, lies immediately west of the Garner and Nelson. As instituted, appellants prayed also for damages in the sum of $1,000,000 for oil removed from the premises by appellees, but by agreement this count was eliminated upon the trial to abide the result of the controversy as to title. The title to all the land in controversy was at one time in appellants or their ancestors, under whom they claim through heirship. Except as to a 60-acre tract on the Nelson, appellees hold all the land under chains of title originating in appellants and their privies. Appellants in the trial court sought to break down these chains of title by attacking different judgments of probate, through which appellees claim, and which, if destroyed, would leave the title in appellants, subject to appellees' pleas of limitation. Though all parties, plaintiffs, interveners, and defendants pleaded the several statutes of limitation, and the issues arising under their pleas were submitted to the jury by 40 special issues, as we understand the record, these issues become immaterial, except as to the aforesaid 60-acre tract on the Nelson. Since as plaintiffs and interveners, appellants, could recover only by an affirmative showing of title, and as we show herein they have no title, it would serve no useful purpose to state the several claims of the different defendants and the nature of their answers. Upon a jury's verdict, all the land in controversy was awarded to the appellees under their separate pleas, which judgment appellants attack by 100 propositions and a brief of 577 pages. About 85 of the original plaintiffs and interveners are prosecuting this appeal against about 50 of the defendants. All the appellants have joined in the same brief, while many of the appellees submit different briefs.

The appellants, whom we group under the name of Walea heirs, sought to recover 180 acres off the south end of the Garner and 300 acres off the north end of the Nelson, adjoining the 180 acres on the south. Their ancestors, James and Louisa Walea, died in 1859, leaving surviving eight minor children, James, Sarah, Elizabeth, Madison, Michael, Elijah, Belonie, and Ursilla, and two adult daughters, Elenora and Oleapan, and Angeline Walea McLean, a daughter of James Walea by a former marriage. In 1860 Lastis Vincent was appointed guardian of the minors. In 1859 J. B. Pevito, Jr., was appointed administrator of the estate of James and Louisa Walea. In his inventory he listed certain property as belonging to this estate. Immediately Adeline Walea McLean, the daughter of James Walea by a former marriage, joined by her husband, filed a contest against this inventory, claiming certain portions of the property as the separate estate of her deceased mother, making the guardian and her half brothers and sisters parties to her contest, and prayed for partition.

Upon a hearing in the county court, judgment was entered denying her claim, but, upon appeal to the district court, an order was entered subsequent to 1866 reversing the judgment of the county court and remanding the case to that court for further consideration. No other orders positively identified as being in this contest were in evidence. Angeline died in 1871, subsequent to the death of her husband. No order was shown making her heirs parties to the contest. In 1871 Lastis Vincent, guardian, filed his final account, naming all the children of James and Louisa Walea, except Elijah and Belonie and Angeline, and describing them as "all the sur-

---

&#9096;&#8680;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

viving heirs of James and Louisa Walea," and prayed that the "estate," without further designating it, except to inventory certain property as a part of the "estate," be partitioned among the eight children named in his report. In 1872, commissioners of partition filed the following report partitioning the land among the eight children named by Vincent in his final report:

"The State of Texas, Orange County.
"To the Hon. Dist. Court of said County to December Term, 1872.
"In obedience to a writ issued from said court, and in compliance with a certified copy of a decree," etc.

Then follows the report in detail: (1) Giving to Elenora Young, one of the Walea heirs, 60 acres of land off the B. Garner survey in the north end of said survey belonging to said estate of 180 acres; (2) giving to James Walea 60 acres south of, and adjoining, the Elenora Young tract; (3) giving Madison Walea 60 acres south of, and adjoining, the James Walea tract. By similar descriptions the 480 acres was divided among the eight Walea minors mentioned by Lastis Vincent in his report. The report concluded by giving to one R. H. Smith the shares of Elenora, James, and Madison, "he being duly entitled to same by a transfer duly recorded, and no objection thereto being made."

At the December term of the district court, 1872, the district court of Orange county, which, under the Constitution of 1869, had probate jurisdiction, entered an order confirming this report. As appears from its reading, there is nothing in the report of the commissioners, nor in the order of confirmation, definitely and clearly identifying these proceedings as being a part of the guardianship, to the exclusion of the administration, nor as a part of the administration, to the exclusion of the guardianship. The heirs named in the report sold their respective interests, and appellees hold, under these heirs, all the land described in the report, except tract No. 4, given to Sarah Walea on the Nelson, and being the aforesaid 60-acre tract.

The Walea heirs assign the following propositions against the title through which appellees hold:

(1) The district court of Orange county, which under the Constitution of 1869 had probate jurisdiction, was without authority to enter a judgment in the guardianship of the Walea minors, partitioning the land in which they had an undivided interest between them and their adult joint tenants.

(2) Failure to make Angeline Walea McLean and Elijah and Belonie Walea parties to the partition proceeding rendered the judgment of partition void.

(3) The description of the land as given in the report of the commissioners of partition was fatally defective.

[1-4] The solution of appellants' first and second propositions is determined by the nature of their attack upon the judgment; that is, whether it was collateral or direct. If we agree with them that their attack was direct, and that the judgment of partition was in the guardianship of the Walea minors, their proposition follows that the district court of Orange county, sitting in probate, was without jurisdiction to enter the partition decree. League v. Henecke (Tex. Civ. App.) 26 S. W. 729; Greer v. Ford, 31 Tex. Civ. App. 389, 72 S. W. 75; Glassgow v. McKinnon, 79 Tex. 116, 14 S. W. 1050. But we cannot agree with them that their attack was direct. Giving them the benefit of all reasonable intendments of their pleadings, they have, by direct allegations, pleaded the defects now advanced by their propositions, and on these allegations prayed for affirmative relief against this order. Their pleadings were not supplemental, but the attack was a part of their original pleadings, that is, in pleading their cause of action they recognized the bar created by this probate judgment, and, as an element of their cause of action, made the attack, pleading the defects now urged, and on such defects prayed that the probate judgment of partition be canceled. The judgment attacked was entered by the district court of Orange county sitting in probate, and appellants' suit here was filed and prosecuted to judgment in that court, but, of course, at the time it had no original probate jurisdiction. This pleading, though filed in the court that rendered the judgment attacked, did not constitute a direct attack.

Appellants' suit was in trespass to try title, and contemplated the recovery of the land in dispute. The attack upon the order of the probate court was only incidental to the main purposes of the suit. Had appellants prevailed, the orders would not have been affected in the least, except as to the parties before the court on the particular issues involved on this hearing. To constitute a direct attack, all parties interested in the judgment must be before the court. The proceedings must be before the court that entered the judgment attacked, where the judgment attacked is by a court of general jurisdiction, and the object of the proceeding (1 Black on Judgments, § 252, says "the sole object") must be to deny the apparent validity of the judgment, and to have it declared null and void. The proceedings must involve all parties interested in the judgment, and the final decree, if the attack prevails, must absolutely destroy the judgment, and remove it from the record for all purposes, except as to innocent holders. An attack that would only destroy the judgment in a particular proceeding instituted for an independent purpose, leaving its validity in other proceedings open to question, is collateral, and not direct. This is the doctrine of our courts. Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Templeton v. Ferguson, 89 Tex. 47, 33 S. W. 329;

Pearson v. Lloyd (Tex. Civ. App.) 214 S. W. 759. This court, in Pearson v. Lloyd, questioned the holding in the Sanford Case (Tex. Civ. App.) 189 S. W. 343, which appellants cite in support of their proposition of direct attack. In Crawford v. McDonald, the Supreme Court said:

"A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of same, in a proceeding instituted for that purpose, such as a motion for a rehearing, an appeal, some form of writ of error, a bill of review, an injunction to restrain its execution," etc.

Clearly, appellants' attack does not come within that definition. Again in that case it was said:

"A collateral attack on a judgment is an attempt to avoid its binding force in a proceeding not instituted for one of the purposes aforesaid, as where, * * * in a suit to try the title to property, a judgment is offered as a link in the chain of title, and the adverse party attempts to avoid its effect," etc.

With equal certainty, it follows that appellants' attack comes within this definition of collateral attack. See, also, 34 C. J. 520, § 827.

[5] The principles of direct and collateral attack have the same application to a judgment of the county court, sitting in matters of probate, as to the judgment of a district court, for it is well settled that, in all matters relating to the administration of estates of deceased persons, county courts are courts of general jurisdiction, and all presumptions will be indulged in favor of their jurisdiction, when exercised over a matter committed to them by law, that will be indulged in favor of the jurisdiction of other courts of general jurisdiction. The same rule as to collateral attack applies to them as to other courts of general jurisdiction. Weems v. Masterson, 80 Tex. 52, 15 S. W. 590; Crawford v. McDonald, supra; Templeton v. Ferguson, 89 Tex. 47, 33 S. W. 329; Taffinder v. Merrell, 95 Tex. 95, 65 S. W. 177, 93 Am. St. Rep. 814; Murchison v. White, 54 Tex. 83; Wilkin v. Simmons (Tex. Civ. App.) 151 S. W. 1145.

[6-10] Construing appellants' attack as collateral, we conclude that the judgment of partition was entered in the administration of the estate of James and Louisa Walea, deceased, and not in the guardianship of the Walea minors. If we are correct in that conclusion, appellants concede that the district court, sitting in probate, had jurisdiction in the administration of the estate of James and Louisa Walea to enter the judgment of partition. Article 3631, R. S. 1925. There are no facts in the record affirmatively identifying the partition proceedings as being a part either of the administration or the guardianship. The record goes no further than to show that the order of partition was made in the general administration

of the property left by James and Louisa Walea to their heirs. No order being shown closing the administration of James and Louisa Walea, as against this collateral attack it will be presumed that it was pending on the docket of the district court in 1872. No order being shown disposing of the partition proceedings filed by Angeline and her husband, it will also be presumed that it was pending in 1872.

Then we have on the docket both the guardianship administration and the administration of the estate of James and Louisa Walea, and in both administrations petitions praying for partition. The district court was without jurisdiction to enter the decree in the guardianship, but had jurisdiction to enter it in the administration. The law presumes that the district court, a court of general jurisdiction, knew the extent of its jurisdiction, and entered the judgment in that proceeding over which it had jurisdiction for the purposes of partition. The fact that Angeline died in 1871, subsequent to the death of her husband, and prior to the entry of the partition decree, does not affect its validity as to her heirs. As the judgment was entered in the administration of the estate granting the prayer of Angeline for partition, it will be presumed in support of the judgment against the collateral attack that all necessary parties were made subsequent to the death of the original parties and before the entry of the decree, 34 C. J. 537, § 841. Being parties to the decree, the heirs of Angeline were bound thereby. That they were not mentioned in the judgment of partition, nor awarded anything therein, does not affect its validity against them as against a collateral attack. "It is conclusively presumed to have properly adjusted the claims of all of the heirs." Reed v. Robertson, 106 Tex. 56, 156 S. W. 196.

The record shows without dispute that Elijah and Belonie died without issue, and before the entry of the judgment of partition. Appellants urgently insist that they raised an issue against this conclusion, but in this they are in error. Their strongest witness, who testified only in the most general way, admitted that Elijah died before Angeline, and that Belonie died about the same time as Elijah. Since the record shows without dispute that Angeline died on the 24th of December, 1871, this witness' testimony destroyed appellants' case, and, when his positive evidence is construed in connection with the report of Lastis Vincent, appellants made no issue that Elijah and Belonie died after the entry of the order of partition.

[11] The description of the land as given by the commissioners of partition in their report was not fatally defective. Manifestly, nothing appears on the face of the description making it void, that is to say, on the face of the description it does not appear that

a survey could not have been made of the 480 acres, as directed by the commissioners, and appellants have no proposition of latent defect.

What we have said disposes of all propositions advanced by the Walea heirs attacking the judgment of partition.

[12] Under the propositions announced, none of the Walea heirs had title or claim to any of the land in controversy. Not having title, and being plaintiffs, they cannot complain on appeal of the other errors assigned, based on the submission of the issues of limitation and the refusal of the court to submit the issues of conflict between the three surveys.

[13] What we have said disposes of all propositions advanced by all appellants attacking the judgment of the court awarding appellees the land on the Nelson, except the claims of the heirs of R. H. Smith, deceased. At his death, Smith owned tract No. 4, as described in the partition of the Walea estate, being the 60 acres immediately off the north side of the Nelson, immediately south of the Walea 180 acres on the Garner. By the terms of his will, this tract descended to his two sons, R. H., Jr., and Trayhan, and three daughters by a former marriage, Eula R. Davis, Jessie Billups, and Agnes V. Wingate, whose mother was Mrs. Mariane C. Smith. Mrs. Wingate subsequently died intestate, and her interest descended to her three children, Illa Mae, W. J., and Mattie E. On the trial, it was shown that these heirs of R. H. Smith owned the record title to this 60 acres. The record affirmatively shows that the extent of R. H. Smith's claim on the Nelson at the time of his death was this 60 acres. This tract was awarded to the appellees claiming it on the verdict of the jury finding for them on their pleas of limitation. We have carefully read appellants' brief, and find no statement challenging this part of the jury's verdict as being without support. Appellees have made a statement showing occupancy, use, and enjoyment for a period of more than 33 years, fully meeting all the essentials of a limitation title. On its face, this showing is a complete bar to all the Smith heirs in their claim on the Nelson.

At her death, Mrs. Mariane C. Smith left surviving her the three daughters already named, to wit, Eula R. Davis, Jessie Billups, and Agnes V. Wingate, born to her and her husband, R. H. Smith. She died intestate, owning in her separate right an interest on the Garner, which descended to her three daughters. At his death, R. H. Smith owned 180 acres of the Walea tract on the Garner, holding the same under the three Walea heirs to whom it was decreed in the partition proceeding of that estate, which is affirmatively shown by that decree. By his will he devised all his interest in the Garner to the three daughters born to him and Mrs. Mariane C.

Smith, purporting to will to them the entire Garner survey. There being other claimants to the Garner, a partition suit was instituted, styled Eula R. Davis et al. v. Unknown Heirs of Anna West et al., in which the heirs of R. H. Smith and his wife, Mrs. Mariane C. Smith, were awarded a tract of land described as containing 514.8 acres off the south side of the Garner, which included the 180 acres held by R. H. Smith under the Walea heirs. Since this suit involved all the interest claimed by the Smith heirs on the Garner, it follows that the judgment of partition confined their interest on the Garner to this specific tract of 514.8 acres. After this decree was duly entered, Mrs. Davis and Mrs. Billups sold their interest to M. A. Watson. Mrs. Agnes V. Wingate having died, and M. A. Watson, having been appointed guardian of the persons and estates of her three minor children, Illa Mae, W. J., and Mattie E., under orders of the probate court, sold their interest to J. A. Oliphant, who later sold to M. A. Watson, who, in turn, conveyed to W. C. Woods.

In a second partition suit involving the Garner, this tract of 514.8 acres previously awarded to the Wingate heirs, and which Woods claimed through them, under the chain of title just given, was decreed to him. Certain of the appellees hold this title to the 514.8 acres. After attaining their majority, Illa Mae and W. J. Wingate executed deeds to those holding under the deed of their guardian, confirming his deed. As the partition decree first above described limited the claim of the Wingate heirs to the 514.8-acre tract, and as Mrs. Davis, Mrs. Billups, Illa Mae Wingate, and W. J. Wingate, by their voluntary deeds, have divested themselves of all title to this tract, the judgment of the trial court decreeing that they recover nothing on the Garner is affirmed without further discussion. But Mattie E. Wingate, asserting the invalidity of her guardian's deed to J. A. Oliphant, seeks to recover the one-ninth undivided interest in this tract inherited by her through her grandmother. As she has no issue of limitation, and because of her minority appellees have no limitation against her, it follows that her right to recover this interest depends upon her attack against this guardian deed. The propositions upon which she bases her attack will be stated later.

Mrs. Agnes V. Wingate, at her death, owned in her separate right all the Luce survey, except 150 acres. This title descended to her three children, Illa Mae, W. J., and Mattie E. Illa Mae and W. J., by deeds of unquestioned validity, sold their interest in this survey, which, through mesne conveyances, is claimed by certain of the appellees. As they have advanced no propositions challenging these deeds, and as they are not in position to attack the submission by the court

of the issues of limitation as it affected the other appellants, the judgment of the trial court divesting them of all title to the Luce is affirmed without further discussion.

By attacking M. A. Watson's administration of the guardianship of her minor sister, Mattie E. Wingate, Illa Mae Wingate forced his resignation, and in turn was appointed guardian of her estate. Under orders of the probate court she sold, as guardian of Mattie E., her interest in the Luce survey to Flora E. Foster, under whom certain of the appellees hold. By appropriate assignments and propositions, Mattie E. Wingate attacks this deed of her guardian, and as the heir of her mother seeks to recover an undivided one-third interest in the Luce. Limitation not being an issue between Mattie E. and appellees, her rights depend upon her attack against this deed.

The following statement reflects the facts upon which Mattie E. Wingate bases her assignments against these guardian deeds:

On the 21st day of May, 1908, the county court of Orange county made and entered up-on its minutes an order appointing M. A. Watson temporary guardian of the estates of Illa Mae, W. J., and Mattie E. Wingate. This order was regular in every respect, except it did not recite, "Unless the same is contested at the next regular term of the court after service of citation, the same shall be made permanent, as required by article 4092 R. C. S. 1911." On this order citation in due form issued. Watson duly qualified as such temporary guardian, and assumed the duties of his appointment. On the 11th day of July, 1908, the county judge of Orange county made and entered an order on his probate docket making permanent Watson's temporary appointment. This order was never carried into the minutes. Assuming to act as guardian of the estate of the Wingate minors, Watson made application to sell their interests in the Garner survey. On this application, the court entered its order of sale. Watson as guardian made due report of his sale, and in due form an order of confirmation was entered. No attack is made upon the regularity of these proceedings, except by denying the appointment of Watson and asserting the insufficiency of the description.

On July 15, 1914, Illa Mae having attained her majority, and Watson having filed his resignation as guardian of the estate of Mattie E. Wingate, an order was entered on the judge's probate docket accepting his resignation as to Mattie E. Wingate "to take effect when another guardian is appointed," but continuing the appointment as to W. J. Wingate. By a nunc pro tunc order entered at the October term, 1914, this order was entered on the minutes "as of July 15, 1914." An order dated the 28th day of July, 1914, of record on the minutes, reciting the resignation of M. A. Watson as guardian of Mattie

E. Wingate, and appointing Illa Mae her guardian, was offered in evidence. There is nothing on the face of this order identifying it as a temporary appointment, but its recitals are those of a permanent appointment. July 28th was not in term time, as the July term of court adjourned for a few days prior to that date. Below the entry of this order on the minutes, and near the left-hand corner of the page of the minute book, where it was entered, is the clerk's notation: "Filed July 28, 1915. A. H. Coale, Clerk." In her application filed 7/24/14, Illa Mae prayed to "be appointed guardian of the person and estate of Mattie E. Wingate for a period of six months from this date." On the 28th day of July, 1914, the following order was entered on the judge's probate docket on that application:

"Case No. 382. Estate of: Mattie E. Wingate, Minor. Name of administrator, guardian or executor: Illa Mae Wingate, post office, Dallas, Texas; attorney, Jones & Laney, Dallas, Texas. Nature of application, petition, or exhibit: App. letters of g.ship. Date of filing: 7/28/14. Date of orders: 7/28/14.

"Orders of Court: Application for temporary letters of guardianship presented and granted as prayed for. Bond of guardian fixed at $4,-000.00. Said Tem. guardian will take charge of all the estate of the said Mattie E. Wingate and out of the funds belonging thereto—she will pay all necessary expenses of the Ward until October term, 1914, of this court."

There was no showing that citation ever issued on her appointment. No order was entered which by its recitals purported to make permanent the order on the docket of temporary appointment, and neither the docket order nor the order on the minutes contained the recital, "Unless the same is contested at the next term of court after service of citation the same shall be made permanent." Neither the order on the docket nor the order on the minutes appointed appraisers, and no order appears in the record making that appointment. As guardian, Illa Mae Wingate sold the interest of Mattie E. Wingate in the Luce survey to Flora E. Foster, as already stated. The regularity of this sale is not attacked, except as to the sufficiency of the description of the land, and the authority of Illa Mae to make the sale, and the court's jurisdiction to approve her sale. By propositions asserted by all the appellants, but only for the benefit of Mattie E. Wingate, these guardian sales are attacked on the following grounds:

(a) The failure to embody in the order of temporary appointment the provision, "Unless the same is contested at the next term of court after service of citation the same shall be made permanent," rendered the appointments absolutely void.

(b) The failure to carry forward into the minutes the order appointing Watson per-

manent guardian rendered such order absolutely void.

(c) The entry on the docket of the order accepting the resignation of Watson, without carrying it into the minutes at that term, rendered that order void, on the ground that the court was without jurisdiction to enter the order at a subsequent term by a nunc pro tunc order.

(d) Not having discharged Watson, the court was without jurisdiction to appoint Illa Mae Wingate guardian.

(e) The failure to issue citation on the order appointing Illa Mae Wingate temporary guardian rendered her appointment void, and, there being no order of permanent appointment, the temporary appointment expired at the next term.

(f) The failure to name appraisers in the order of appointment rendered it absolutely void.

(g) Both guardian deeds were void on the ground of defective description of the land.

[14] In attacking these sales, their first proposition is that the failure to embody in the orders of temporary appointment the provisions of article 4092, Revised Statutes 1911, which is as follows:

"The order of the court in making such appointment shall state that unless the same is contested at the next regular term of the court, after service of citation, the same shall be made permanent,"

—rendered the appointments, upon the face of the orders, absolutely void and open to attack anywhere and for any and all purposes, without special pleading. Appellants are in error in their construction of this article. It does not, by express provisions, make the order void for the failure to embody this provision therein. Appellants' proposition can be sustained only by giving this article a mandatory construction.

[15] In determining whether a statute is mandatory or directory, courts should be guided by the following principles:

"Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the Legislature to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other." 36 Cyc. 1137; Ferris Brick Co. v. Hawkins, 53 Tex. Civ. App. 578, 116 S. W. 80.

The reading of the chapter of which this article is a part reveals no purpose to make it mandatory, and no reason exists for construing it as mandatory; that is to say, as we understand this chapter relating to the appointment of temporary guardians, we see no reason why the *jurisdiction* of the court should depend upon the incorporation in the order of appointment of the provisions of this article. Not being mandatory, this article should be construed in the light of the following proposition announced by Judge Cooley:

"It has long been settled that particular provisions may be regarded as directory merely; but it is meant that they are to be considered as giving directions which ought to be followed but not so limiting the power in respect to which the directions are given that it can not be effectually exercised without observing them. That those directions which are not of the essence of the things to be done, but which are given with a view merely to properly, orderly and prompt conduct of the business, and by failure to obey which the rights of those interested will not be prejudiced are not commonly to be regarded as mandatory, and if the act is performed but not in time or the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute." Cooley, Const. Lim. (4th Ed.) pp. 90–93.

It is our conclusion that article 4092 is directory and not mandatory in its terms.

[16] The statutes (article 4125, R. S. 1925) requiring the appointment of appraisers are directory only, and not mandatory, and the failure to name appraisers in the order of appointment is a mere irregularity, not affecting the validity of the order. McGrady v. Clary (Tex. Civ. App.) 247 S. W. 1099; Wilkin v. Simmons (Tex. Civ. App.) 151 S. W. 1145.

[17, 18] But, if in error in their construction of article 4092, then appellants say that their attack upon these orders, from the contents and nature of their pleadings, was direct and not collateral, and that the defects alleged and proved rendered the orders absolutely void. All the issues assigned were fully pleaded by Mattie E. Wingate, not by way of supplemental plea, but as a part of her original plea; and as a part of her prayer for recovery of the land she prayed for the cancellation of these probate orders and the cancellation of the deeds of her guardian. On the proposition stated in discussing the judgment of partition of the Walea estate, the attack against these guardianship sales was collateral, and not direct. Against a collateral attack, it was held in Crawford v. McDonald, supra, that the failure to issue citation in a cause pending in a court of general jurisdiction was not a ground of collateral attack. This rule has been applied to matters in probate. Schwind v. Goodman (Tex. Com. App.) 221 S. W. 579. Therefore, that citation was not issued on the appointment of Illa Mae Wingate, as guardian, cannot be raised in this proceeding by Mattie E. Wingate.

[19, 20] From the statement made, it appears that (a) the order making Watson's temporary appointment permanent was not entered on the minutes, but only on the probate docket; and (b) the order appointing Illa Mae temporary guardian was not entered on the minutes, but only on the probate docket. Under article 3302, Revised Statutes 1925, ap-

pellants assert that the entry of these orders on the probate docket was not an entry "on the records of the court," and hence, by the direct provisions of that article, was "a nullity." It is not an open question that this article is mandatory, and that a failure to comply with its mandatory provisions renders the act of appointment "a nullity." But we think appellants' proposition invalidating these orders was met and denied by the Dallas Court of Civil Appeals in West v. Keeton, 17 Tex. Civ. App. 139, 42 S. W. 1034, giving an entry on the probate docket of a judgment in guardianship the same force and effect as an entry on the minutes. This case was cited with approval in Teague v. Swasey (Tex. Civ. App.) 102 S. W. 458, where it was said that such an order on the docket was admissible. In support of their proposition, appellants cite Greenwood v. Furr (Tex. Civ. App.) 251 S. W. 332; Krawietz v. Kneiski (Tex. Civ. App.) 236 S. W. 805; Threatt v. Johnson (Tex. Civ. App.) 156 S. W. 1137, and Drew v. Jarvis, 110 Tex. 136, 216 S. W. 618. These authorities are not controlling. In one case the attack was direct. Here it is collateral. In the other cases the discussion of the point was obiter. Drew v. Jarvis, as we understand it, has no application to this case.

[21] The order on the probate minutes bearing date the 28th day of July, 1914, we construe as without probative force, except in further explanation of the order of temporary appointment of Illa Mae Wingate, as the same appears on the judge's probate docket. The file mark: "Filed July 28, 1915" on the page of the minutes where this order is recorded is without probative force. There is no law requiring the clerk to file the draft of judgment to be entered on his minutes, and a file mark made by him thereon has no force and effect as evidence. Against the collateral attack here urged, it will be presumed that the order was entered on the minutes on its date.

[22] This construction of the orders relating to the appointment of Illa Mae Wingate, as guardian of Mattie E. Wingate, leaves appellees without an order making her temporary appointment permanent, but this does not impair her acts. The continuing in force of the order of temporary appointment did not depend upon the entry of an order making that appointment permanent. Having been duly appointed temporary guardian, she had all the powers inherent in that appointment until discharged by a proper order of court, and this without the issuance of citation or an order making her appointment permanent. Gann v. Kearn (Tex. Civ. App.) 249 S. W. 878.

[23, 24] That Illa Mae Wingate prayed to be appointed guardian of the person and estate of Mattie E. Wingate "for a period of six months from this date" did not limit the order of appointment to that. There is no statute authorizing the court to appoint a guardian for a period of six months, or any other specific period of time. There is no direct statement in the order appointing the guardian that it was for a period of six months. The order went no further than to grant the application. In granting the application, it must be conclusively presumed, as against the collateral attack here made, that the court granted it within its jurisdiction; that is, granted it upon the conditions and terms provided by the statute. Therefore, the prayer for appointment for six months would be ignored and the appointment be given full force and effect as though such limitation did not appear in her application.

[25] Under our holding that the docket entry of a judgment in a guardianship has the same force and effect as an entry on the minutes, the docket entry accepting the resignation of Watson was a sufficient entry of that judgment. Therefore it is not necessary for us to consider further appellants' proposition denying the jurisdiction of the probate court to enter its judgment nunc pro tunc.

[26, 27] Appellants attack the descriptions in the two guardian deeds as being fatally defective. In his application Watson, as guardian, described the land to be sold as "an undivided one-third interest in and to 567 acres of the Bradley Garner, survey in Orange county." The order of sale described the land as "an undivided one-third interest in and to 567 acres of the Bradley Garner survey in Orange county on the bayou." The order of sale recited and further described the land as "real estate belonging to said minors, Illa Mae, W. J., and Mattie E. Wingate." The report of sale described the land as "185 acres or an undivided one-third of 562 acres of the Bradley Garner survey in Orange County, Texas." The order of confirmation described the land as "an undivided one-third interest in and to 556 acres of the Bradley Garner survey, same being subdivision No. —— of said survey." Watson's deed as guardian described the land as "an undivided one-third interest in subdivision of tract No. 6 of said survey." In selling Mattie E. Wingate's interest in the Luce survey, in her application to sell, the guardian described it as "an undivided one-third interest in and to 529 acres of the Sarah M. Luce 640 acres," etc. The order of sale described this land as "an undivided 1.3 interest in 529 acres of the Sarah M. Luce survey." There are other recitals in both proceedings fully and completely identifying the land sold as the interest of the Wingate heirs in the Garner. This description, when read in the light of the evidence, that the interest of the Wingate heirs had been by decrees of partition defined and located as a part of the 514.8-acre tract, which was fully described and identified on the ground—no question can be made against the sufficiency of the description in the Watson

deed. As we understand the attack of appellants under this proposition against the deed of Illa Mae Wingate, it rests entirely upon the use of the expression "an undivided 1.3 interest," instead of "an undivided one-third interest." It is clear upon a reading of the description given in the application, the order of sale, the report of sale, and order of confirmation, that the guardian was selling Mattie E. Wingate's interest in the Luce survey, being a one-third interest. The use of the expression "an undivided 1.3 interest" is a manifest error, and, when construed in the light of the entire record, it is clear beyond the point of question that the whole interest of Mattie E. Wingate was involved. Waterhouse v. Gallup (Tex. Civ. App.) 178 S. W. 773, answers all criticisms urged by appellants against the description as given in these deeds.

[28] Of course, it follows, if the appointments of Watson and Illa Mae Wingate as guardians were legal, and their proceedings in the sale of Mattie W. Wingate's interest in the Garner and Luce surveys were not subject to exception, that the deeds executed by them to the purchasers were valid, and conveyed Mattie E. Wingate's interest in the lands in controversy, and therefore the court did not err in receiving these deeds in evidence.

On the propositions discussed, none of the appellants have title to any of the land in controversy. Therefore their propositions attacking the findings of the jury on the issues of limitation become immaterial.

The judgment of the trial court is in all things affirmed as against all the appellants.