**BURTON et al. v. McGUIRE et al.**
No. 1168—5146.

Commission of Appeals of Texas, Section A.
July 22, 1931.

Dies, Stephenson & Dies, of Orange, and Howth, Adams & Hart, of Beaumont, for plaintiffs in error.

A. J. Schnitzel, Holland & Holland, George E. Holland, and Monroe Chapman, all of Orange, W. W. Cruse, of Beaumont, Hollis M. Kinard, of Orange, C. A. Toler, of Beaumont, Adams & Bruce, of Orange, T. L. Foster, J. W. Timmins, and Joiner Cartwright, all of Dallas, and Ben H. Powell and Woodward, Hart, Gay & Hard, all of Austin, for defendants in error.

CRITZ, J.

As shown by the opinion of the Court of Civil Appeals, the record in this case is unusually large, even for this court. The application for the writ of error contains about 283 full legal sized typewritten pages; the brief of appellant filed in the Court of Civil Appeals contains 577 pages; the brief of the Sun Oil Company, which is printed, contains 227 pages; the statement of facts contains about 550 pages; the transcript about 350 pages; there are about 85 plaintiffs in error, and about 50 defendants in error. We mention the above matters, as did the Court of Civil Appeals, to show the tremendous task presented to this court by this appeal, and to demonstrate that it is utterly out of the question for this court to discuss all of the many assignments presented in the application.

On final presentation of the case in the Supreme Court, the parties have each filed supplemental briefs and arguments presenting in more condensed form their several contentions, and have thus greatly aided us in digesting this record. In this opinion, we are generally confining ourselves to the issues presented and discussed in these supplemental briefs and arguments.

This suit was tried in the district court of Orange county, Tex., by the plaintiffs in error, Burton et al., against defendants in error, McGuire et al., in the form of trespass to try title. The land involved consists of 180 acres on the Bradley Garner survey, 320 acres, more or less, on the Aaron Nelson survey, and an undivided interest in the Sarah M. Luce survey and the Bradley Garner survey. Trial in the district court before a jury on special issues resulted in a verdict and judgment for all the defendants. On appeal, this judgment was affirmed by the Court of Civil Appeals at Beaumont in an exhaustive and well-considered opinion by Judge Walker. 3 S.W.(2d) 576. The case is in the Supreme Court on writ of error granted on application of Burton et al.

The Court of Civil Appeals has made a very excellent and comprehensive statement of the nature and result of this case. In the interest of brevity, we refer to and adopt the statement of that court. We, however, will make such further statements in the course of this opinion as are necessary to demonstrate the matters discussed. However, the immensity of this record and the numerous issues raised make it well-nigh impossible to make a complete statement of all of the issues involved.

As we gather from this record, the plaintiffs in the district court, also plaintiffs in error here, may be divided into three general groups, viz.: The Walea heirs, the Smith heirs, and Mattie E. Wingate.

The Walea heirs are seeking to recover 180 acres of land off the south end of the Garner survey, and 320 acres, more or less, off the north end of the Nelson survey. The Walea heirs assert no title to the Luce survey except where it is contended the two surveys conflict.

The Smith heirs claim 60 acres of land on the Nelson survey. Also they, along with the Walea heirs, claim a 30-acre tract and a 43-acre tract on the Walker. The jury found against the claim of the Smith heirs to the 60 acres on the defendants' pleas of limitation, and this verdict is amply supported by the evidence. We refer to and approve the holding of the Court of Civil Appeals as to this issue, and shall not again refer to it.

Mattie E. Wingate, one of the plaintiffs in error, is seeking to recover an undivided one-third interest in the Luce survey, and an undivided interest in the Garner survey. This claim is based upon the fact that Mrs. Agnes B. Wingate died seized and possessed of the entire Luce survey except 150 acres. She also owned at the time of her death an undivided one-third interest in a tract of about 513 acres on the Garner survey. Mattie E. Wingate, surviving daughter, seeks to recover a one-third interest in each of these tracts, which were sold through guardianship proceedings.

The defendants in error hold the lands in question, disregarding the issues of conflicts and overlapping surveys, under chains of title originating in the defendants in error and their privies. As links in these chains appear certain court proceedings and judgments which are necessary to connect the chains. Plaintiffs in error seek to break these chains by attacking these judgments and proceedings. If such attacks are successful, the chains are broken, and, in the absence of limitation, the titles are left in certain of the plaintiffs in error. We pause here to remark that all of these attacks are collateral.

We shall first discuss and dispose of the attacks made by the plaintiffs in error, who are grouped under the general name of Walea heirs.

Plaintiffs in error attack a certain judgment of partition entered by the district court of Orange county, Tex., on December 12, 1872, purporting to partition the estate of James and Louisa Walea, deceased husband and wife, among their heirs. It is contended that this judgment is void and subject to collateral attack: (a) Because the record in the present case shows conclusively that it was entered by the district court in a guardianship proceeding involving the minor heirs of James and Louisa Walea, deceased, along with other heirs not minors, or parties to the proceeding, over whom the court had no jurisdiction; (b) because the description of the several tracts awarded to the several parties are so indefinite as to be insufficient in law to identify the lands attempted to be partitioned.

We shall discuss the two contentions in the order stated.

In our opinion, the record in this case will not sustain the contentions that the judgment was entered in a guardianship proceeding. It is true that the caption to the decree in question, as shown by a bill of exception, contains the following clause:

"In the District Court of Orange County, Texas, December Term, A. D. 1872, Hon. Wm. Chambers, judge thereof presiding guardianship of the minor heirs of James and Louisa Walea, Dec'd."

As we view this record, the only evidence contained therein which tends in any manner to support the contention that the district court was attempting to make a partition in a guardianship proceeding is the clause above quoted. This clause appears in the caption of the judgment, as shown by one of the bills of exception. We also here pause to remark that it is admitted by both parties that the district court, under the Constitution of 1869 (article 5, § 7), has probate jurisdiction, but of course in a guardianship proceeding it could not exercise jurisdiction over persons not minors, and therefore not parties to the proceeding. Glassgow v. McKinnon, 79 Tex. 116, 14 S. W. 1050.

We think that when we consider the entire record in this case in the light of the rule that all reasonable presumptions should be indulged in favor of the validity of the judgment, it becomes reasonably clear and certain that the above judgment was not entered in a guardianship proceeding. The use of the word guardianship in the caption to the above judgment is an indication, standing alone, that the judgment was entered in a guardianship proceeding, but to rebut this indication is the undisputed fact that there was once pending in the probate court of that county both a guardianship proceeding and an administration proceeding. It is shown that the administration proceeding reached the district court, but there is absolutely no showing that the guardianship ever came into the district court at all. The Court of Civil Appeals finds that the judgment was not entered in a guardianship proceeding, and we think that, taking into consideration the presumption in favor of the validity of a judgment, they were fully justified in this conclusion. We therefore overrule the assignments attacking the judgment on the ground that it was entered in a guardianship proceeding.

In this connection, we also call attention to the fact that the decree as contained in the statement of facts, which was agreed to by all parties, does not contain the above-quoted words, and, in view of the rule that the statement of facts when agreed to takes precedence over the bill, we conclude that there is no evidence in the record to show that the decree was entered in a guardianship pro-

ceeding. Texas Jurisprudence Vol. 3, § 564, and authorities there cited.

■ As to the contention that the partition judgment does not sufficiently describe the several portions or tracts into which it was divided, the record shows that the 480-acre tract therein mentioned was divided in the following manner:

" '1. We give and divide to Elenora Young, wife of Francis Young, 60 acres of land off the B. Garner Survey and the North end of said survey belonging to said estate of 180 acres.

" '2. We give to James Walea, one of said heirs, 60 acres South of and adjoining the land given and divided to Elenora Young.'

"The division so continued through the 480 acres, giving to each of the eight heirs 60 acres."

The division so continued through the 480-acre tract giving to each of the eight children 60 acres of land. Under this decree, the first child could take the first 60 acres on the north with the south line of her 60 acres parallel with the north line of the 480-acre tract, and the division would so continue throughout the partition. But be this as it may, the record shows that the eight children had no difficulty among themselves in identifying his or her particular tract. Each entered into possession of a 60-acre tract and sold the same.

Furthermore, it is conclusively shown by this record that all of the eight parties who received allotments of land under such judgment acquiesced therein, and accepted the parts allotted to them under the judgment, went into actual possession thereof, and made conveyance to other parties, with covenants of warranty. Such acceptance would constitute an agreed partition even if the judgment were invalid. Delk v. Punchard, 64 Tex. 364.

■ Plaintiffs in error contend that the record shows that James and Louisa Walea had ten children by their own marriage, and that James Walea had one child by a former marriage, and that the 480-acre tract was attempted to be partitioned among only eight of the children without making the two children of such common ancestors, and the one child of the former marriage of James Walea, parties to such partition proceeding. In this connection, it is contended that it being shown that said three children who were left out of the partition died after such partition decree, the plaintiffs, who are the heirs of the three deceased children, are entitled to a judgment for the interest of such children.

In connection with the above, it is shown by the record that at the time James and Louisa Walea died they left surviving them ten children, the product of their joint marriage. Eight of these children were the par-

ties who received the allotments of land in the decree under discussion. Two of these children, Belonie Walea and Elijah Walea, products of the joint marriage received nothing. Also Angelina Walea, the product of James Walea's first marriage, received nothing.

The Court of Civil Appeals disposed of the issues here made by holding that the partition proceeding was made in the administration of the estate of James and Louisa Walea, deceased. Angelina Walea was certainly then dead. Also, she died subsequent to her husband.

We have already discussed the matter with reference to the condition of the record, as showing that the partition took place in an administration proceeding. No good purpose would be served by further discussion of that question here. We, however, here refer to and adopt the findings and conclusions of the Court of Civil Appeals as to this question. If the partition took place in an administration proceeding, it will be presumed in favor of the judgment that all necessary parties were made prior to the entry of the judgment. In fact, as we understand the plaintiffs in error, they only contend that such judgment is void on the ground that it was entered in a guardianship proceeding.

With reference to the two children of the second marriage, Belonie and Elijah Walea, the Court of Civil Appeals also finds that they were dead at the time the partition judgment was rendered. We think this finding fully justified by the record.

The record shows that in 1859, about two months after the deaths of James and Louisa Walea, application was made to the probate court reciting such deaths, and reciting the fact that such deceased parties had left a number of minor children, and praying to be appointed guardian of their persons and estates. By order entered January 30, 1860, Lastis Vincent was appointed guardian of eight minor children. This order named both Elijah and Belonie Walea as two of the minors. It is also undisputed that in addition to the eight children just named there were two other surviving children, Elenora and Olepan. The conclusion adduced by the facts just stated and not disputed by any other fact in the record is that the two last-named heirs were not minors. After his appointment, the above-named guardian continued as the guardian of the persons and estates of the eight children mentioned until 1871. The guardian then made a report, duly sworn to, in which he makes known to the court, under oath, that as guardian he has received certain properties and disbursed certain moneys, leaving in his hands the lands before mentioned to be distributed among the surviving heirs of said estate. He then names the eight heirs shown in the above decree

and states that they are all the heirs. From the foregoing, it will be observed that Vincent was appointed guardian of eight of the Walea children in 1860. and in 1871 he reported, under oath, that the persons who were entitled to receive the Walea estate then in his hands were eight. This report does not include the names of Elijah and Belonie. It will also be noted that this guardian showed a detailed acquaintance with the Walea heirs who were living at the time he made his final report, and if Belonie and Elijah were living it is hard to conceive that he would have left them out of this report. This report was made at a time when the matters and things therein concerned were current and transpiring, and should be given greater weight than the manifestly imperfect memory of human witnesses who are testifying to events half a century old.

When we come to consider the testimony on this question, as shown by the record, we find that it is contended that these two children died very shortly after the judgment of partition was rendered, but the witnesses who testify to such effect do so from memory, and, when we consider their evidence as a whole, it is so uncertain and indefinite that in law it should not be allowed to overturn the solemn decree of a court, which is presumed to have ascertained the facts; especially when such judgment is supported by the other evidence above mentioned. In other words, it will be presumed that the court made inquiry to ascertain if it had before it all of the heirs of James and Louisa Walea, and such presumption should not be overturned by the vague and indefinite evidence set out in this record. Not a single witness gives any definite date as to the death of either of these children, and, at best, it is contended by the plaintiffs in error that they died only a few months after the judgment was entered.

In connection with the above, we do not wish to be understood as holding that this judgment is subject to collateral attack on the grounds urged. We do not pass on that question, as it is not necessary. What we hold is that, if the right be conceded, there are no probative facts to rebut the presumption in favor of the judgment.

The record in this case discloses that Mattie E. Wingate, one of the plaintiffs in error, was the owner of a one-third interest in a tract of about 529 acres on the Luce survey, and also owned a one-third interest in 185 acres undivided on the Garner survey. The land on the Garner survey was sold by M. A. Watson purporting to act as guardian for Mattie E. Wingate, and the land on the Luce survey was sold by Illa Mae Wingate, also purporting to act as Mattie E. Wingate's guardian. We here pause to remark that Illa Mae Wingate became guardian after M. A. Watson had resigned. The deeds above mentioned form links in the chains of title of the defendants in error to the lands conveyed. Plaintiffs in error attack such deeds and the probate proceedings connected therewith on several grounds, which we shall now discuss.

■ It is contended that both of the above deeds are void because neither the order appointing Illa Mae Wingate temporary guardian, nor the order making the appointment of M. A. Watson's guardianship permanent were ever carried to the probate minutes of the county court of Orange county, Tex. These contentions must be overruled. The failure of the clerk to carry the order appointing Illa Mae Wingate temporary guardian into the minutes after same had been duly entered in the probate docket, was at most, a mere irregularity, and did not invalidate the appointment of the guardian, nor did it render the deed made by her void. Also, the same rule applies to the failure of the clerk to carry the order making M. A. Watson's appointment as temporary guardian permanent to the probate minutes. Hannon v. Henson (Tex. Com. App.) 15 S.W.(2d) 579.

In the case just above cited, it was shown that the order appointing the guardian was duly entered on the probate docket, but was not carried to the probate minutes. In passing on the validity of such an order, Section B of the Commission, in a well considered opinion by Judge Short, held that the entry on the docket was a sufficient compliance with the statute, and that the failure to carry such order to the minutes did not invalidate the appointment. In that case, Judge Short exhaustively reviewed the statutes and undoubtedly reached a correct conclusion.

■ Article 4092, R. C. S. 1911, in force at the time, provided:

"The order of the court in making such appointment shall state that unless the same is contested at the next regular term of the court, after service of citation, the same shall be made permanent."

The same statute is carried into the codification of 1925 as article 4135, except where the statute of 1911 uses the words "after service of citation" the 1925 statute uses the words "after notice." The two statutes, however, mean the same thing.

Plaintiff in error contends that since neither the order appointing M. A. Watson temporary guardian, nor the order appointing Illa Mae Wingate temporary guardian contain the words or the substance of the words provided by article 4092, supra, such orders were and are void.

We think the failure of the court to incorporate such words in the order a mere irregularity, and, since there is absolutely no showing that any injury resulted, such failure will not invalidate such orders. Fur-

thermore, this is a collateral attack, and the orders are certainly good as against such an attack.

Plaintiffs in error contend that the order appointing Mattie E. Wingate's guardian was, and is, void because it was made in vacation, and was never thereafter made permanent by any order of the court entered in term time. This contention is utterly untenable. The statute expressly authorizes the appointment of a temporary guardian in vacation. When we come to consider articles 4091 and 4092, 1911 codification, in connection with other articles of the same chapter, it is clearly evident that the statute does not intend to require the court, after he has appointed a temporary guardian, either in vacation or in term time, to enter an order making such appointment permanent. In this connection, we think it is contemplated that if the appointment is not contested it shall become permanent by operation of law. It is true that article 4092 provides "shall be made permanent," but, when we read this article in the light of the other articles of the same chapter, it becomes evident that no additional order is required. The very next article, 4093, provides in detail what shall be done in case the appointment is contested. This article expressly provides that the temporary guardian shall continue to act during the pendency of the contest, if any, and then provides that, in case the appointment be set aside, the court shall require of the person appointed, certain exhibits and reports. When article 4093 is considered as a whole, it is clear that it contemplates that the person whose appointment is being contested remains guardian until he is removed. Finally, when we come to examine the provisions of article 4095 all doubt is removed. That article defines the notice which shall be issued by the clerk, and this notice expressly provides:

"* * * And, that, if such appointment is not contested at the term of court so named in the citation, then the same shall *become* permanent." (Italics ours.)

It will here be noted that article 4095 expressly states that the appointment will *become permanent.*

We therefore hold that where an order has been entered appointing a temporary guardian, as provided by our statutes, it is not necessary for the court to thereafter enter an order making such appointment permanent. Of course, we do not intend to hold that if the court should see fit to enter such an order same would be illegal; in fact, we think it would be the better practice to do so.

In Gann v. Kern, 249 S. W. 878, 880 (Tex. Civ. App. Writ Ref.) the Court of Civil Appeals for the Third district at Austin, in a well-considered opinion by Judge Key, considered the question here discussed, and held that no order making a temporary guardianship permanent was intended or required. We quote and adopt the following from the opinion in that case.

"We do not sanction appellants' contention that, if the county court failed to make an order appointing Mr. Gann permanent guardian, the bond previously given when he was appointed temporary guardian became functus officio, and the signers thereof ceased to be liable upon it. On the contrary, inasmuch as the guardian obtained possession of his wards' property by reason of the execution of that bond, we think the principal and sureties thereon should be held liable, unless it was shown that the probate court, by reason of the fact that the guardian's right to remain in that position had been successfully contested, had made an order discharging the makers of that bond. This was not done. We think the legislative intention that the appointment of a temporary guardian shall become permanent by the failure of any one to contest that appointment at the next term of the court is sufficiently indicated, if not made manifest, by the last clause in article 4095, which reads, 'and, that, if such appointment is not contested at the term of court so named in the citation, then the same shall become permanent.'

"It will be noted that the statute does not require the court, where no contest is filed, to reappoint the temporary guardian, and, in view of that fact and the provision of the statute just quoted, it seems to us that the courts should hold that a temporary guardianship becomes permanent when no contest is filed, and that the original bond remains in force. Not to so hold would give designing persons opportunities to get possession of the estates of minors, and if no contest was filed, to hold and exploit same after the succeeding term of court, without any bond to secure the rights of the wards."

It is contended that the order appointing Illa Mae Wingate was void because it attempted to appoint her for a period of six months only. We think this contention should be overruled. It is true that the application prayed for her appointment as guardian for six months, and the order appointing her stated that the application for letters of guardianship was presented and granted as prayed for. This order then fixes the amount of the bond and authorizes the guardian to take charge of the estate. We think when the order is considered in the light of the statute it is nothing more and nothing less than an order appointing a temporary guardian, as contemplated by the statutes under discussion.

It is contended by the plaintiffs in error that the descriptions contained in the two guardianship deeds above discussed are fatally defective. We have carefully examined

the record with reference to this matter, and think the descriptions, when considered in the light of the entire record, are sufficient. We here refer to Judge Walker's opinion in the Court of Civil Appeals touching this matter, and fully approve his holding thereon.

■ It is contended by the plaintiffs in error that the two sales above discussed are void because the orders of sale authorizing M. A. Watson and Illa Mae Wingate to sell the lands here being discussed did not require the guardian to give bond for twice the amount for which the land was sold, as required by article 4201, R. C. S. 1925, being the act of 1913, in force at the time. This contention should be overruled. Sloan v. Woods (Tex. Com. App.) 25 S.W.(2d) 309, 310.

We quote the following from Judge Harvey's opinion in Sloan v. Woods:

"It is not thought that the mere fact that an order for the sale fails to show on its face that the court required the guardian to give bond, as prescribed in article 4201, invalidates the sale made in pursuance of such order. The provision that the requirement be stated in the order is directory. The important thing which the statute requires is the giving of the bond, but, even so, the presumption arises from the decree confirming the sale that this requirement has been fulfilled. This presumption is conclusive as against a collateral attack on the validity of the sale. If, in reality, the court fails to require that the bond be given, and the guardian fails to give it, the sale is thereby rendered voidable but not void."

In the foregoing portion of this opinion, we have attempted to discuss all attacks on the probate proceedings involved in this litigation of sufficient importance to merit consideration. In concluding this portion of the opinion, we wish to again call attention to the fact that all holdings we have made are in view of attacks made on the probate proceedings in question, which are purely collateral.

■ Certain of the plaintiffs in error claim certain lands as a part of the Nelson survey which are located on the Luce and Walker surveys. These claims embrace a 43 and a 30-acre tract on the Walker, and certain other lands on the Luce. These claims are all based on the theory that the Nelson survey meanders the edge of Cow bayou and not the edge of Cow bayou marsh. If the edge of the marsh is the line meant in the last call in the field notes of the Nelson, then all these assignments are destroyed. If the edge of the bayou itself is the line, then the Walker survey, which is junior to the Nelson, is wiped out, and as we gather from the record a large part, if not all, of the Luce survey, also junior to the Nelson, is wiped out. The field notes of the Nelson survey, as contained in the patent, are as follows:

"Beginning at a stake and mound on B. Garners South line from which a black jack bears East 32 varas marked X, a dogwood bears N. 55 deg. E. 25 varas marked X.

"Thence East with Garners line 3700 varas to a stake and mound in prairie on S. Jetts West line.

"Thence South with Jetts line 2300 varas to a stake and mound on the edge of Cow Bayou marsh.

"Thence up said marsh, and bayou with the meanders 9745 varas to the place of beginning."

We have carefully examined the testimony in regard to the above contentions and find that undoubtedly the Nelson follows the edge of the marsh, and not the edge of the bayou. This is almost conclusive from the third call itself, and when the call is considered in conjunction with the other evidence the conclusion is legally certain. The witness Daniell, the surveyor, and the only witness as to location, testified that he made a correct survey on the ground of the Luce. He testified that this survey was correct, accurate, and made on the ground. The field notes of the survey made by him were introduced in evidence and reflected his work. This survey on its face shows no conflict with the Nelson. It places the original southeast corner of the Luce in the west line of the Nelson. Under this survey, the field notes make the edge of the marsh its west boundary. The Nelson begins at a stake and mound on the south line of the Garner and runs east with the Garner south line 3,700 vrs. to mound on Jetts west line. Mr. Daniell testified that the beginning corner of the Nelson, which is the south line of the Garner, could never be reached with a closing call by following the bayou instead of the marsh. This testimony is not contradicted in the record. On the other hand, it is shown that if the marsh is followed the survey closes. It is true that the call for the Nelson is "thence up said marsh and bayou," but it is evident that the edge of the bayou and the edge of the marsh cannot both be followed. One or the other must be discarded. We think, however, there is no difficulty in harmonizing the call and ascertaining the meaning of the surveyor. The surveyor evidently had in mind to run with the marsh adjacent to the bayou, and he used the word "bayou" in the sense of designating and describing the marsh. This is fully sustained by the fact as above stated, that when this is done the Nelson survey lines will close, but if you attempt to follow the bayou they cannot be closed.

We have read and carefully considered all assignments presented by this appeal. We have discussed all such assignments as in our

opinion present matters of sufficient importance.

In our opinion, the two lower courts have entered correct judgments in this case, and the judgment of the Court of Civil Appeals, which affirms the judgment of the district court, should be affirmed, and we so recommend.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.