VELMA CARROLL ET AL V. J. B. MCLEOD ET AL.

No. 7340. Decided June 28, 1939.
Rehearing overruled July 26, 1939.
(130 S. W., 2d Series, 277.)

*Newland & Cornett, Fulbright, Crooker & Freeman,* and *C. A. Leddy,* all of Houston, for plaintiffs in error.

It was error for the Court of Civil Appeals to reverse the judgment of the trial court and to render judgment for the defendants in error because the probate court was totally without jurisdiction to authorize the temporary guardian to

sell the interest of plaintiffs in error in the land in question, since the undisputed evidence showed that no notice of the appointment of the temporary guardian was ever issued, or posted, as required by statute, and further showed that there was never any order of the probate court making the temporary appointment permanent. Underwood v. Pigman, 32 S. W. (2d) 1102; Conoway v. Morrow, 147 S. W. 344; Decatur Land, Loan & Abstract Co. v. Rutland, 185 S. W. 1064.

*Wallace Hawkins*, of Dallas, *Carney & Carney*, of Atlanta, *Vison, Elkins, Weems & Francis* and *Thomas Fletcher*, all of Houston, for defendant in error.

The probate court had jurisdiction and its judgments and proceedings are not subject to collateral attack, and the guardian appointed by it had power to sell regardless of whether he be a temporary or permanent guardian. Clayton v. Hurt, 88 Texas 595, 32 S. W. 876; Bouldin v. Miller, 87 Texas 359; Wright v. Doherty, 59 Texas 34.

Mr. Judge German delivered the opinion of the Commission of Appeals, Section A.

This case involves the question of the validity of a guardian's deed.

On November 7, 1922, J. D. Wall made application to the Judge of the County Court of Cass County, Texas, to be appointed temporary guardian of the estates of his four minor children, all of whom were under fourteen years of age. The application was filed on that date by the County Clerk. Obviously, the County Judge must have acted on the application on that day, or one or two days later, because on the 11th day of November, 1922, J. D. Wall and certain sureties executed bond in the sum of $500, which recited that J. D. Wall had theretofore been appointed temporary guardian of said four minor children. Also, on said 11th day of November, 1922, J. D. Wall took the oath required by law as temporary guardian. On the same day certain parties returned an inventory and appraisement of the estates of the said minors, reciting that the same had been produced before them by J. D. Wall, temporary guardian. The Judge's docket showed an order appointing J. D. Wall as temporary guardian, but the date of its entry was not shown. On November 20, 1922, formal order of appointment was entered by the probate court "In Regular Session, November Term, 1922." After reciting that it appeared to the court that the interest of the minors and their estates

required immediate appointment of a guardian, it is further recited as follows: "It is therefore ordered by the Court that the said J. D. Wall be and is hereby appointed temporary guardian of the person and estate of said minors, Velma Wall, et als, Minors, without citation, and that due notice of said application be given, and that letters of Temporary Guardianship issue to said J. D. Wall on his giving bond in the sum of Five Hundred Dollars, payable and conditioned as required by law, and taking the oath within twenty days; and it is further ordered that such appointment of guardianship, unless contested at the next regular term of this court, after service of citation, shall be made permanent."

While it may not be important, yet we express it as our opinion that the formal order must have undoubtedly been prepared and handed to the Judge on the date of the filing of the application, and the appointment made by notation upon the Judge's docket; although the order was not formally entered until November 20, 1922. The fact that the temporary guardian executed bond and took oath of office, and the appraisers named in the formal order returned inventory and appraisement, all on the 11th day of November, 1922, obviously shows that the appointment by the Judge took place on or prior to November 11, 1922, and the date set out in the order entered represented the date of formal entry on the minutes of the Court. This, we think, clearly shows an appointment by the Judge in vacation of J. D. Wall as temporary guardian, and ratification of that appointment by the court in regular session. We are therefore of the opinion that the appointment of J. D. Wall as temporary guardian was unquestionably valid, and that he qualified as such. This in fact does not appear to be questioned.

All papers in this proceeding have been lost for a number of years. The probate minutes of Cass County are entirely silent as to proceedings in this guardianship from November 20, 1922, until January 14, 1924, in the sense that there are no entries of any kind on the minutes of the court during that period. On said last named date, J. D. Wall, "Guardian of the Estate" of the four minors, made application to the County Court of Cass County for an order of sale, authorizing him to sell an undivided one half interest in 82 acres of land in Cass County. Notice of this application was duly given. On January 21, 1924, the County Judge entered order authorizing sale of said land. J. D. Wall, as guardian, made report of sale, and on February 15, 1924, the probate court entered order approving said sale. On the 25th day of February, 1924, J. D.

Wall, as guardian, executed and delivered to J. D. McLeod deed to the interest of said minors in said 82 acres of land, the recited consideration being $750. It seems to be conceded that all of the proceedings, beginning with the application for sale, and terminating in guardian's deed, were regular and are not subject to collateral attack, unless for the reason hereinafter set out. At least no assignments are presented in application for writ of error questioning the regularity of said proceedings and the guardian's deed.

The present suit was instituted in the District Court of Cass County by Mrs. Velma Carroll and husband, Mrs. Lois Kendrick and husband, Mrs. Edith Ballard and husband, and James Wall; the said Mrs. Carroll, Mrs. Kendrick, Mrs. Ballard and James Wall having formerly been the wards of J. D. Wall in the guardianship proceeding mentioned above. They will be designated plaintiffs. The suit was against J. D. McLeod and others holding under the guardian's deed executed February 25, 1924. They will be designated defendants.

Plaintiffs' petition was in form of trespass to try title, but contained elaborate allegations attacking the proceedings of the probate court leading up to said guardian's deed, and also said deed, as being void. The purpose of the suit was to recover the undivided one half interest in the 82 acres of land, more or less, conveyed by said deed. Trial in the district court resulted in an instructed verdict in favor of plaintiffs. In the judgment it is recited that the court was of the opinion that the purported deed of February 25, 1924, was wholly void, and all the purported orders of the probate court were void, because at the time of the entry of the order of sale and the entry of the order of confirmation of said sale, J. D. Wall was not the duly appointed guardian of the estates of said minors. The Court of Civil Appeals held that the guardian's deed was valid, and reversed and rendered judgment that plaintiffs take nothing. 109 S. W. (2d) 316.

Although it is apparently admitted that J. D. Wall was duly appointed temporary guardian of the estates of said minors, yet it is the contention of plaintiffs that he did not become, and could not become, permanent guardian, either by virtue of the statute, or by order of the court, until after notice as provided for by Article 4137 of the Revised Statutes of 1925; and that the record affirmatively discloses that such notice was not given. They in effect admit that if the record is merely silent as to the giving of notice (and if this be a collateral attack), then it will be conclusively presumed that

notice sufficient to constitute Wall permanent guardian was given, and the court had jurisdiction to authorize the sale by said guardian. Their contention has been reduced to the last analysis in the following statement in application for writ of error:

"It, therefore, becomes vital to ascertain whether in truth and in fact the record is merely silent on this point, or whether it affirmatively shows that there was no citation or notice in the guardianship proceeding. Plaintiffs in error take the position that, by reason of the combined effect of three factors, the record affirmatively shows that there was no notice or citation in this case; these three factors are: (1) Article 4106 of the Revised Civil Statutes of 1925, specifically requires the county clerk to record in the probate minutes all such notices, citations and the returns thereon. This record is therefore a part of the judgment roll, which, under all the authorities, may be looked to on a collateral attack of a judgment for want of due service where there is no express or presumed finding by the trial court. (2) It is a well-settled legal principle that all public officers are presumed to have carried out their official duties, in the absence of a showing to the contrary. (3) The deputy county clerk and the county judge during the time in question testified in this case that they had examined the probate minutes during the period from the appointment of J. D. Wall as temporary guardian down through the time that the court confirmed the order of sale of the property in question, and they found that there was no record of the issuance or service of any citation or notice in this case. Since the clerk is presumed under the law to have recorded any citation or notice with the return thereon in the probate minutes *the failure of such minutes to show such instrument constitutes affirmative proof of the fact that no such notice was ever issued or served.* Following through these steps logically, the result seems inevitable that the record affirmatively shows that there was no citation in this guardianship matter." (Emphasis by plaintiffs).

■ It is absolutely certain that this was a collateral attack. Burton v. McGuire, 3 S. W. (2d) 576, affirmed 41 S. W. (2d) 238; Pure Oil Co. v. Reese, 124 Texas 476, 78 S. W. (2d) 932; Harmon v. Henson, 15 S. W. (2d) 579; Sloan v. Woods, 25 S. W. (2d) 309.

Plaintiffs not only by their pleadings but by their proof have brought directly into question the validity of the pro-

bate proceedings and the guardian's deed made in virtue of same.

It is definitely settled that the probate court, acting in matters of guardianship, is a court of general jurisdiction, and its judgment confirming sale of land, under order of said court, is not subject to collateral attack, unless the record *affirmatively* discloses a lack of jurisdiction. Or, putting the matter in another way, if the record is silent as to facts concerning jurisdiction, it will be conclusively presumed that all the facts not appearing of record, which might have been proven, were found by the court in favor of its jurisdiction. Authorities supra, and Crawford v. McDonald, 88 Texas 626, 33 S. W. 325; Murchison v. White, 54 Texas 78, 82; Martin v. Robinson, 67 Texas 368, 3 S. W. 550; Gooslin v. Varney's Trustee, 268 Ky. 394, 105 S. W. (2d) 178; Dye Bros. v. Butler, 209 Ky. 199, 272 S. W. 426.

The precise question in this case is this: In this collateral attack will it be presumed, in the condition of the record as it is, that notice of the appointment of Wall as temporary guardian, as provided by Article 4137, was given? This in turn depends upon whether or not the record is silent as to giving of notice, or affirmatively discloses that no notice was ever given.

It is of course settled that if temporary guardian be appointed, either by the judge in vacation or by the court in term time, and notice be given, the appointment is made permanent by operation of law, and it is not necessary that order of court making the appointment permanent be entered on the minutes. Burton v. McGuire, supra; Massie v. De Shields, 62 S. W. (2d) 322; Gann v. Kern, 249 S. W. 878.

In the case of Pure Oil Co. v. Reese, 124 Texas 476, 78 S. W. (2d) 932, it was held that "failure to give formal statutory notice of application of widow for appointment as guardian of her minor children (as required by Article 4114) cannot be shown in a collateral attack on the county court's order of appointment."

In the case of Bouldin v. Miller, 87 Texas 359, 28 S. W. 940, where the record was silent as to the giving of notice to sell real estate by guardian, the court held that if the giving of such notice was jurisdictional, nevertheless, in the absence of an affirmative showing by the record that it was not given, the presumption was that there was notice.

In the case of Guilford v. Love, 49 Texas 715, will be found an elaborate discussion of the question of presumptions as to jurisdictional facts, including notice, in a collateral attack upon judgments of the probate court.

Plaintiffs' whole contention may in reality be reduced to this proposition: The record in this case, as disclosed by the minutes of the court and the Judge's docket (the papers being lost), shows nothing with reference to notice; Article 4106 provides that "all notices, whether published or posted, with the returns thereon," shall be copied at length in the minutes; it is presumed that the clerk did his duty and copied all notices in the minutes;—therefore, the failure of the minutes to include any notice shows affirmatively that no notice was given.

It will be at once noted, however, that this does not in any sense make the record any less a silent one; it merely furnishes ground for saying that the record is full and complete and contains all proceedings which were had. But if it be admitted that it is a full and complete record, nevertheless it is still defective (or silent) in disclosing jurisdictional recitals, and this furnishes an ideal situation for the presumpton of jurisdiction. If the assumption urged by plaintiffs was permitted merely by reason of a statute which declares that certain papers shall be recorded at length, then there would seldom, if ever, be any occasion where presumptions would arise. Mr. Freeman on Judgments, in Vol. 1 (5th ed.), pages 817 and 818, very aptly says:

"Were the record always a faithful story of the steps taken to bring the subject matter and the parties before the court, there would be no occasion to resort to the presumptions or intendments so frequently met with in this branch of the law. For if all that was done to obtain jurisdiction could be seen by a perusal of the record itself, the courts would not presume anything to the contrary. The record would speak for itself and except in a few jurisdictions where, as we have seen, parol evidence is receivable to explain or contradict its recitals, there could be no inquiry beyond its plain terms. Unfortunately, however, judgment records adduced in evidence are often imperfect, either entirely omitting jurisdictional recitals or else disclosing conflicting or confusing ones. And it becomes a question in such a contingency as to how far the courts will extend recognition to a judgment so evidenced. Is a mere silent record to be construed as negativing jurisdiction? Are the courts forced to conclude from a failure to fully set out the facts as to process, appearance or other matters of juris-

diction, that the proper steps to invest the court with power to adjudicate were not taken? Such a conclusion would be inescapeable if the law required the record to detail the jurisdictional facts. For in that case it could be determined from a mere inspection of the record that the court acted without authority or, if it did, in fact, proceed within its jurisdiction that competent evidence to sustain its judgment is wanting."

He then proceeds to give the rule deducible from all the authorities in this language:

"To conclude from a mere want or insufficiency of jurisdictional recitals in the record of a court of general jurisdiction that jurisdiction was not actually acquired would be, in effect, to presume against the record, whereas it is a rule of general application that every intendment consistent with the record of such courts will be indulged to sustain their proceedings and judgments. The rule is that upon collateral attack of a domestic court of general jurisdiction the want of jurisdiction or invalidity of the judgment must affirmatively appear upon the record itself, and until the contrary appears it will be presumed that the court had jurisdiction. Nothing will be intended to be out of the jurisdiction of a court of general jurisdiction but that which expressly appears to be so. The absence from the record of the necessary jurisdictional facts will not overcome the presumption of jurisdiction, and that papers which ought to have been included in the judgment-roll are missing therefrom is not enough to make it affirmatively appear that the court had no jurisdiction. In the absence, therefore, of any showing in the record either one way or the other, a presumption arises in favor of the validity of the judgment of a court of general jurisdiction, and the existence of all matters going to the power of the court or tribunal to render the judgment."

■ The authorities amply justify the statement that the matter of jurisdiction must be determined by the *recitals* of the record, and not by mere silence in same; and said *recitals* must affirmatively disclose a want of jurisdiction.

We find that the case of Gulickson v. Bodkin, 78 Minn. 33, 80 N. W. 783, by the Supreme Court of Minnesota, has many times been cited. In that case the contention here made by plaintiffs is met by the following very emphatic language:

"It has been repeatedly held by this court that, when the validity of a domestic judgment is sought to be attacked collaterally on the ground of want of jurisdiction, the jurisdic-

tion is to be conclusively presumed, unless the contrary affirmatively appears on the face of the record itself; that this presumption obtains when the record is silent upon the jurisdictional fact, as well as where it affirmatively states or recites it. The want of jurisdiction does not affirmatively appear on the face of the record in this case. *The mere absence from the judgment roll of certain papers which ought to have been made a part of it, and which, if included, would affirmatively show that jurisdiction had been acquired, is not enough to make it 'affirmatively appear from the face of the record that the court had no jurisdiction.'*"

See also Kavanah v. Hamilton, 53 Colo. 157, 125 Pac. 512, Ann. Cas. 1914B, 76.

Counsel lay great stress upon the fact that Article 4106 provides that certain papers shall be copied at length in the minutes, and the presumption that the clerk did his duty in that regard. We call attention to the fact that Article 4137 provides that "immediately after the appointment of a temporary guardian the clerk of the court shall issue notice" etc. Certainly there is an equally cogent presumption that the clerk did his duty in that respect. It must be remembered also that the action of the court in recognizing its jurisdiction and in recognizing Wall as guardian, by authorizing him to make sale of real estate, and in confirming said sale, creates a presumption far superior to any presumption which may arise concerning the action of a clerk in obedience to statutory provisions. The language of Justice Wheeler in the case of Dancy v. Stricklinge, 15 Texas 567, 65 Am. Dec. 179, is indeed pertinent here. After stating that "we must suppose that the *Court* did act properly, rather than the *clerk* did his duty in preserving a history of its proceedings," he makes the following more elaborate statement:

"It would be extremely unreasonable and unjust to hold the purchaser of property at a sale by an administrator, whose authority at the time was recognized by the Court, and was not, and has not been questioned in any direct proceeding having that object in view, bound, at any length of time thereafter, when his title is brought in question in a collateral action, to show that the administrator was duly and legally appointed and qualified to act as such in the particular instance. And it would be equally unreasonable and unjust to hold the innocent purchaser responsible for the errors, irregularities and ommissions of the officers entrusted with the keeping of the records of proceedings in the Probate Courts, especially when it

is matter of judicial and common notoriety that they have so illy and imperfectly performed that duty, in, perhaps, the great majority of cases. Some sanctity should be given to judicial proceedings; some time limited beyond which they should not be questioned for the mere errors and irregularities of subordinate officers; and some protection afforded to those who purchase at sales by judicial process."

■ We conclude, therefore, that the record in this case does not affirmatively show lack of jurisdiction, and in this collateral proceeding it will be conclusively presumed that notice was given as required by Article 4137. The appointment of Wall as temporary guardian being shown, the statute made such appointment permanent without formal order to that effect being entered. The lack of notice not being affirmatively proven by recitals in the record, the authorities, and especially the case of Pure Oil Co. v. Reese, supra, conclusively determined the question here presented.

We do not wish to be understood as holding that Wall as temporary guardian could not, as agent of the Court, have been authorized to make sale of real estate. See Shumard v. Philips, 13 S. W. 510; Alexander v. Pointer, 54 Ark. 480; 16 S. W. 264, and Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090.

For the reasons stated herein, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court, June 28, 1939.

Rehearing overruled July 26, 1939.