CONDRA et al. v. GROGAN MFG. CO. et al.
No. 4625.

Court of Civil Appeals of Texas.
Dec. 22, 1949.

Rehearings Denied April 5, 1950.

590

Lane & Anderson, Center, for Condra et al.

Vinson, Elkins, Weems & Francis, Houston, for Grogan et al.

R. L. MURRAY, Justice.

Robert G. Condra and wife, Inez Condra, Pink E. Condra and wife, Bobbie Condra, Edris Lightner and husband, L. B. Lightner, Idinea Sirles and husband, Nolan Sirles, and Charles H. Condra, plaintiffs in the trial court, brought this suit, in the form of trespass to try title, seeking to recover title and possession of 49.5 acres of land situated in Liberty County, Texas, a part of the Daniel Donaho League, or else to establish as an alternative, their ownership of larger undivided interests therein than they were conceded to own. They also sought an accounting for oil and gas produced and sold from said land, and to recover from the producers and purchasers the one-eighth (⅛th) royalty alleged to be due thereon. Grogan Manufacturing Company, Shell Oil Company, Inc., Republic National Bank of Dallas, Second National Bank of Houston, Citizens State Bank of Houston, R. J. McBean, H. M. Seydler, A. V. Pace, Homer E. Henderson, Clarence A. Davenport, A. Davenport, Flores Davenport Hobbs and husband, J. E. Hobbs, Mrs. Ethel Janet Boyle and husband W. Stewart Boyle, George P. Mitchell, Joe Lundin, Morris Rauch, Harry Pulaski, Louis Pulaski and Floyd L. Karsten were all named as defendants. Excepting Grogan Manufacturing Company, Clarence A. Davenport, A. Davenport, and Flores Davenport Hobbs and husband, J. E. Hobbs, the various defendants were made parties because they were thought either to own or to claim interests in the leasehold estate or estates created by oil and gas leases covering the land in controversy, or else because they were alleged to have produced or purchased oil and gas from said land.

The plaintiffs specially plead their title, and, in addition to pleading facts which showed that they had jointly inherited an undivided 11/60 interest in a 239.5 acre tract of land that included the 49.5 acres sued for, they plead an oral partition of the larger tract, partition of the larger tract by estoppel as against Grogan Manufacturing Company, and that they had perfected title to the 49.5 acres under the ten-year statute of limitation. Vernon's Ann. Civ.St. art. 5510. As a basis for their alternative claim, they sought to show inheritance through a bachelor uncle, Willie Lee Smith, who was a non compos mentis, and who died intestate, alleging and undertaking to prove that a purported guardian's deed which ostensibly conveyed the interest of said uncle in the land to Grogan Manufacturing Company was void because the person who purported to act as guardian and to make said guardian's deed had never been legally appointed guardian of the estate of the said Willie Lee Smith, had never qualified or attempted to qualify as such, and had never made application for authority to sell the interest of the said Willie Lee Smith in said land. Plaintiffs admitted that prior to instituting this suit they had themselves executed and delivered oil and gas leases which covered and included the land in question, that such leases are still valid and subsisting leases, and that these leases and the leasehold estates thereby created are now owned by some of the defendants.

With the exception of Republic National Bank of Dallas and R. J. McBean, both of

whom filed disclaimers, all of the defendants answered by both pleas of not guilty and general denials. Grogan Manufacturing Company, together with some of the other defendants, plead, in addition, laches and stale demand, estoppel, that they were innocent purchasers for value without notice of plaintiffs' claims, and that plaintiffs' cause of action was barred by the statutes of limitation of two, three, four, five, and ten years. Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5526, 5527. Some of those who claimed interests in the oil and gas in and under the land also plead that since all persons claiming to own an interest in the land, both plaintiffs and defendants, had executed and delivered to them or to their predecessors in title oil and gas leases by which the lessors purported to lease to the lessees either the whole of the 239.5 acre tract of which the 49.5 acres in controversy was unquestionably at one time a part, or their entire interests in said 239.5 acre tract that 239.5 acres had been pooled or unitized for gas production purposes, and that by executing and delivering such leases, together with certain division orders regarding delay rentals the plaintiffs had estopped themselves from claiming the full one-eighth (⅛) royalty due on the oil and gas produced and purchased from the well situated on the 49.5 acres.

The trial was commenced before a jury, which the plaintiffs had demanded, but after the plaintiffs had rested their case, motions by defendants for an instructed verdict had been overruled, and the defendants had introduced a portion of their evidence, the Court, on motions of the defendants and over plaintiffs' objections, withdrew the case from the jury, discharged the jury, and thereafterwards rendered judgment without the benefit of jury fact findings. All parties to the suit had previously agreed that the question of the validity of the guardian's deed purported to have been made on behalf of Willie Lee Smith, as well as that of the amount of royalty due on oil and gas produced from the land, should be left to the determination of the Court.

Judgment was rendered that the defendants Republic National Bank of Dallas and R. J. McBean be discharged on their disclaimers, that plaintiffs jointly recover of the remaining defendants an undivided 55/240 interest in and to the 49.5 acres of land in controversy (a part of which interest was held to have been inherited by plaintiffs from Willie Lee Smith, the Court having held that the purported guardian's deed void), subject to specified oil and gas leases, and that the plaintiffs jointly recover of the defendants Morris Rauch, Harry Pulaski, Louis Pulaski and Floyd L. Karsten the sum of $4,290.75, and of Shell Oil Company, Incorporated, the sum of $380.93.

Both the plaintiffs and the defendants, with the exception of Republic National Bank of Dallas and R. J. McBean, seasonably excepted to the judgment, gave notice of appeal, and have perfected their appeals as provided by law.

Since all parties have appealed, they will be hereinafter designated as in the trial court.

Plaintiffs sued for title and possession of a 49.5 acre tract, described by metes and bounds, out of the East end of a larger tract, called in prior title papers to contain 207 acres, but which actually contains either 236.5 acres or 239.5 acres; or, in the alternative, to recover an undivided interest in the 207 acre tract greater than that which defendants conceded plaintiffs owned.

Plaintiffs claim as the children of Harriet Elizabeth Smith Condra, who was a daughter of Dan A. Smith and Nan E. Smith. For the purposes of this appeal, said Dan and Nan Smith are to be treated and considered as the record owners of the 207 acre tract at the time of their deaths. Dan and Nan Smith had six children. Defendant Grogan Manufacturing Company claims under deeds from three of such children and under deed from the guardian of one of such children, each of which purported on its face to convey a "certain undivided ⅕th interest in and to 207 acres" of land, in two tracts, out of the D. Donaho League.

The Hobbs defendants claim an interest in the property under their mother, Jessie

Smith Davenport, who such Hobbs defendants claim took an interest in the property as an heir of a child of W. J. Smith, one of the children of Dan and Nan Smith.

Plaintiffs plead title to, and claimed the 49.5 acre tract by an alleged oral partition of the larger tract, and also assert title to said 49.5 acre tract under the ten year statute of limitations, and partition of the larger tract by estoppel as against defendant Grogan. Defendant Grogan claims that it purchased and obtained the undivided interests of its grantors in the entire 207 acre tract (now known to contain 236.5 acres or 239.5 acres); that there has not been any partition of the property; that if there was an oral partition, Grogan had no notice of such partition; that if there was any such partition between some of the owners of undivided interests in the 207 acre tract, all of the owners of the tract did not join in such a partition and such partition is not binding upon any of the owners of the tract; that the plaintiffs, the children of one of the owners of the 207 acre tract, never had or held any designated, specified tract adverse to the other owners of the 207 acre tract; and that, if the Condras did ever attempt to hold any such designated, specified tract, no notice of such adverse claim was ever given Grogan.

Defendant Grogan further contends that it holds the interest of Willie Lee Smith, non compos mentis, and one of the children of Dan and Nan Smith, by and under a deed from the guardian of said Willie Lee Smith; that if it be correct in this contention, then plaintiffs are the owners of only a 44/240 interest. Plaintiffs further contend that Grogan did not secure the interest of the non compos mentis under the guardian's deed. If plaintiffs be correct, then they are the owners of a 55/240 interest in the property, it is contended by defendant Grogan.

The interests of the plaintiffs, the defendant Grogan Manufacturing Company and the Hobbs defendants are subject to oil, gas and mineral leases of the defendants Floyd L. Karsten, Shell Oil Company, Inc., and those defendants holding under such leases.

The trial court found that the plaintiffs had failed to make a case of partition or title by adverse possession or by estoppel and took that part of the case away from the jury. By agreement of the parties, the question of the validity and effect of the guardian's deed, as well as the amount of royalty due on oil and gas produced from the property, was presented for the determination of the Court, and the Court held the guardian's deed void and rendered judgment for the plaintiffs for a 55/240 interest in the property.

Plaintiffs have appealed from the action of the Court denying them recovery of the 49.5 acre tract of land sued for and taking the case from the jury on the questions concerning the partition of the property and the claim of title under the ten year statute of limitations. Defendants have appealed from the action of the Court holding the guardian's deed void and rendering judgment for the plaintiffs for a 55/240 interest rather than only a 44/240 interest in the property.

Daniel A. Smith and wife, Nancy E. Smith, were the common source of record title; they owned a tract of land containing 239.5 acres which included the 49.5 acres in controversy here. Both of them died intestate and their title passed by descent and distribution. Daniel A. Smith died first and left surviving him his widow and six children, George H. Smith, Henry W. Smith, Willie Lee Smith, John A. Smith, Jake Smith and Harriet E. Smith, who was the mother of plaintiffs Robert G. Condra, Pink E. Condra, Edris Lightner, Idinea Sirles and Charles H. Condra. Jake Smith died intestate before his mother died. He left surviving him one descendant, a child that died intestate and before the death of its grandmother Nancy E. Smith, and a wife, Jessie E. Smith, who later married the defendant A. Davenport and became the mother of the defendants Clarence A. Davenport, and Flores Davenport Hobbs. The said Jessie E. Smith, later Jessie E. Davenport, survived her child by Jake Smith and later herself died intestate. Harriet E. Condra, mother of the Condra Plaintiffs, likewise died intestate before the death of her mother and left as survivors

the five children named above, and her husband Robert M. Condra. Mrs. Nancy E. Smith, grandmother of the Condra children, died on or about August 2, 1921; Willie E. Smith died January 14, 1929. Robert M. Condra, father of the Condra plaintiffs, died June 12, 1934, intestate.

The undisputed evidence shows that Daniel A. Smith and his wife lived for many years on the old Smith home place on the Northeast end of the large tract, with the house and approximately 31.7 acres enclosed within the field fence. This was known as the old home place. The remainder of the 49.5 acre tract claimed by the plaintiffs in this suit was not enclosed, but was used as a horse and calf pasture and it immediately adjoined the old homestead. After the death of Daniel A. Smith and prior to the death of his wife, Nan Smith, Mr. Condra and his children lived in the Smith home with Mrs. Condra's mother, Mrs. Nan Smith, and they were living there at the time of Mrs. Smith's death. Immediately after her death, either on the day of the funeral or on the day following the funeral, the four surviving sons of Mr. and Mrs. Smith made some sort of an agreement with Mr. Condra by which the Condras were permitted to continue to live on the old home place. Willie Lee Smith, one of the sons, was present, but he was, as was stipulated by all parties, a non compos mentis from his infancy and therefore was incapable of making any agreement. Mrs. Jessie Davenport, the widow of Jake Smith, was not present at the time of the conversation or agreement and there was no testimony that either she or her children or her husband were ever notified of the agreement until this suit was filed. In fact, after the death of Jake Smith and his child and his widow's marriage to Mr. Davenport, the families were no longer in contact with each other. The Smiths and Condras were under the impression, according to their testimony, that after the death of Jake Smith and his child and of Mrs. Nancy E. Smith they became the sole owners of the entire tract of land. The testimony as to such agreement made at that time is the basis for the claim of the Condras that an oral

partition of the property was made or attempted to be made thereby. The testimony in regard to what was said at that time is as follows:

H. W. Smith:

"Q. What proposals were made, if any, regarding a division of the two hundred seven acre tract, Mr. Smith? A. We didn't propose any division; we all just agreed that our sister, the Condras—

"Q. Go ahead and tell us the best you can what transpired. A. That the Condra heirs should have the home; they had been living there a number of years. We all had always, and we thought it nothing but fair, that they should have a home, a place they could live.

"Q. What land did you agree—that is, what land did you propose to set apart to them as their separate part? A. The homestead.

"Q. All right, now then, what was considered as the homestead, Mr. Smith? A. That included the little farm and some outlying unimproved land east of the little farm. That is the way we intended it.

"Q. All right, state what you understood, personally understood by what you proposed to give them with reference to whether it extended entirely over the east end, that is, from the north boundary line to the south boundary line? A. I don't think we even mentioned that.

"Q. Your fence wasn't actually on the east line? A. No, it must have been three hundred yards from the old present location to the extreme east line, and that line across the east is not straight, but I looked at that, I surmised that little block in there belongs in that upper corner, doesn't it?

"Q. There never was any fence around that east end? A. No. We never had a fence there.

"Q. While you were out there, though, they did have this old field with the fence around it, first it was the rail fence and later wire? A. That's right.

"Q. That fence included, within that fence was the old Smith family home, wasn't it? A. Yes, sir.

594

"Q. Old man Dan Smith and your mother had their farm and raised a family? A. That's right.

"Q. They had the fence with a cultivated field; to the south was timber land and to the west was timber land? A. That's right."

A. W. Howard:

"Q. Without giving us any conclusion as to what they did, state as best you recall what each one of them said, Mr. Howard. A. Well, they agreed; Mr. George Smith made the suggestion that they give Mr. Condra and his heirs the home place, and they all agreed to it.

"Q. Now, when Mrs. Smith lived there did all of her children live with her or part of them? A. They lived with her until they married and moved off.

"Q. Mrs. Condra stayed with her? A. Yes, sir. Mrs. Condra died before her mother.

"Q. And Mrs. Condra stayed there taking care of her? A. Yes, sir.

"Q. And Mr. Condra stayed there? A. Yes, Mr. Condra was there when Mrs. Smith died.

"Q. Now, Mr. Howard, the day after the funeral, is that when this conversation took place about which you testified? A. Yes, sir.

"Q. And you were there? A. Yes, sir, I was there.

"Q. Now, did Mr. George Smith say to the Condras, 'You can have the homeplace'? A. Yes, sir.

"Q. Or did he say, 'You can have the 49.5 acres'? A. The homeplace—he didn't mention any acres.

"Q. Did he mention the 49.5 acres? A. No, sir, he didn't mention no acres at all; he just agreed to give them the old homeplace.

"Q. But the old home, the old field place, had a fence around it, didn't it, when Mrs. Smith died; that old place where had been cultivated and crops raised long before Mrs. Nan Smith died, hadn't it? A. Yes, sir.

"Q. There were roads going in and out where they could get to town, wasn't there? A. Yes, sir.

"Q. And when Mrs. Smith died Mr. Condra continued living in that homeplace? A. Yes, sir."

John A. Smith:

"A. We wanted those Condra children and their father to have what was known as the old homestead; that was where the old house stood, and they lived in the house off and on up until it burned. I could not tell exactly how long; I am not too much on remembering dates."

"Q. Was there any agreement or understanding as to what should own the west end of the two hundred seven acre tract? A. No, sir, it was undivided.

"Q. I mean between you and the Condras? A. No, that was just left with the rest of us, undivided interest."

"Q. As a part of the transaction and regarding the east end of it, was there any proposal as to who should own the west end of it after that? A. No.

"Q. As between you and the Condras, did Mr. Marion Condra make any statement or agreement with reference to the west end of it belonging to you and your brother? A. I am pretty sure he did not; all he wanted was all we agreed for him to have, that east end."

The Condra children were all minors at that time, some of them too young to know anything of its significance, but they testified that these who did not actually recall hearing the agreement made had been informed thereof early in life and that all of them had been reared in the belief that a valid partition had been thereby effected, and that they were the owners of the land in controversy. They also testified that they always recognized the partition agreement as being binding on them, had acquiesced in the division of the land agreed upon and had claimed only that portion of the land which they understood to have been set apart to them by the agreement and had ratified and confirmed this agreement since they reached their majorities.

In 1927 and 1928 Grogan Manufacturing Company bought for a valuable consideration by general warranty deed an undivided one-fifth interest to the entire 239.5 acre tract of land from each of the Smith brothers, the deed to Willie Lee Smith's undivided interest being by guardian. There is no evidence attacking the adequacy of the consideration paid by Grogan for such interest in the land. Grogan Manufacturing Company was in the sawmill business and during 1929 it cut and removed timber from that portion of the large tract lying west of the 49.5 acres involved in this litigation. Before commencing to cut the timber, the Grogan Company caused a line to be surveyed and marked on the ground a few feet west of the old fence line which plaintiffs claim as their west line and when the Grogan Company cut the timber, it cut only up to the surveyed line and made no effort to cut any trees standing east of the line, on the 49.5 acre tract. The area so cut had a good stand of merchantable timber on it, both pine and hardwood, while the 49.5 acre tract had very little timber on it. All the proceeds of the timber so cut were retained by the Grogan Company for itself, and no part of it was tendered to the plaintiffs. Plaintiffs were not consulted about the removal of the timber at any time and made no request for a portion of the proceeds of the timber cut.

Plaintiffs testified that it was their belief that when the Grogan Company surveyed the line and thereafter confined its logging operations to the area west of the line it was recognizing the partition agreement theretofore made between the Smiths and Condras. The Condras did not undertake to cut any timber from or exercise any control over any of the land except the 49.5 acres and believed that they owned the 49.5 acres and no more. There also was evidence that after the Grogan Company had cut the timber west of such line and retained the proceeds therefrom the Condra plaintiffs made additional permanent improvements on the 49.5 acres of land. Such improvements, however, are shown by the record to have been slight in value and consisted largely of repairs and replacements.

Mr. Condra and some of his children were actually residing on the land, making their home there at the time Grogan Manufacturing Company acquired its deeds. Mr. George Grogan, who handled those transactions for the Grogan Company, testified that he was given actual notice that the Condra family was living on the land at the time, although it was his recollection that George H. Smith told him Mrs. Condra and her family were living there.

In regard to their occupancy and use of the land, and the nature of the claims they were asserting thereto, the plaintiffs, through their own testimony and that of other witnesses, introduced evidence to the effect that (a) except during two or three brief intervals, members of the Condra family or their tenants were actually present and living on the 49.5 acre tract of land continuously from the time Mrs. Nancy Smith died in 1921 until the house burned in 1940; (b) the intervals when no one was physically present on the land resulted from the fact that the occupants were temporarily absent to carry on work, or from exchanges of occupancy of tenants; (c) during every such interval when no one was physically present on the land, household furniture and effects, farming implements, feed or produce and livestock were present in the house and on the land; (d) a crop of some kind was grown on the land and harvested every year; (e) timber for fire wood and ties and staves was repeatedly if not yearly cut from the unfenced portion of the land up to the boundary plaintiffs had claimed; (f) the boundaries to which plaintiffs were claiming were well defined where the land was not actually fenced; (g) during all of said period of time plaintiffs, together with Robert M. Condra, were openly and notoriously claiming title to the 49.5 acres against all persons; (h) Robert M. Condra, the father, recognized the interest of his children in the land and his own limited claim thereto, and was also claiming the land for their use and benefit as well as for his own; (i) each of the plaintiffs

was occupying the land and holding and claiming it for the joint use and benefit for all plaintiffs and as tenants in common with the others.

Beginning in May, 1943, and within a short time thereafter all plaintiffs executed and delivered oil and gas leases, in all of which leases they purported to lease the entire 239.5 acre tract of land, no mention being made either in the granting clause or in the description of the land of an undivided interest therein or any interest less than the whole. The Davenports executed a similar lease dated October 27, 1945. Grogan Manufacturing Company in November, 1941, executed an oil lease whereby they only purported to lease "all of our interest" in the 239.5 acre tract. A well was drilled on the land in controversy in 1946, and considerable quantities of oil and gas have since been produced from it. The well is located outside of what is above described as the old field area being 123 feet south of the fence, but is within the area which the plaintiffs claim had been used as a horse and calf pasture.

There was no evidence in the record that Grogan Manufacturing Company or any of its officers or agents at any time had any discussion or agreement with anyone concerning a partition of the commonly held land into segregated tracts.

The plaintiffs, by their first and second points, contend that the trial court erred in withdrawing the case from the jury and refusing to submit to the jury issues of fact raised by the evidence, and that the Court erred in rendering judgment that plaintiffs recover only an undivided 55/240 interest in the land. In their brief they contend that the evidence outlined above raised questions of fact which were sufficient to have supported a verdict by the jury that Grogan Manufacturing Company was estopped to deny the binding effect of the attempted partition as against it, or else to deny that it had by its own acts and conduct, which were acquiesced in and consented to by plaintiffs, effected a partition of land between itself and plaintiffs. They further contend under said points that the evidence as above outlined was sufficient to support a judgment in their favor for full title to the land in controversy under their plea of limitation.

The plaintiffs concede in their brief that no valid oral partition was effected by the oral agreement made between the Smith brothers and members of the Condra family. This frank admission is made in view of the fact that neither Mrs. Davenport, who was not present at the time of the agreement, nor Willie Lee Smith, a non compos mentis, was bound by the agreement. Under the authority of the cases of Joyner v. Christian, 131 Tex. 274, 113 S.W.2d 1229 and Ellis v. Patrick, Tex. Civ.App., 93 S.W.2d 1201, unless all of the joint owners are bound by an attempted partition of land none of the joint owners are bound. Plaintiffs argue, however, that the Grogan Company by its actions in causing the line to be surveyed and marked on the ground, between the 49.5 acre tract and the balance of the larger tract and in cutting the merchantable timber from the land west of such a line and retaining the proceeds thereof, and never attempting to enter upon the 49.5 acre tract, showed that it had actually been apprised of the partition agreement and intended to ratify and confirm it. With this argument we cannot agree. These circumstances are to be considered in their bearing on the question of the nature and extent of the Condras' use and claim of the property. There is no testimony that the Grogan Company or any of its agents had any actual knowledge or notice of any parol partition of the entire tract. In fact, the testimony, as we have copied it above, is very sketchy and indefinite as to whether any actual agreement to partition was ever made. Some of it rather tends to prove a parol gift to the Condras by three of the Smith brothers. Under the early case of Allday v. Whittaker, 66 Tex. 669, 1 S.W. 794, by the Supreme Court, even though an oral partition had actually been made, if the cotenant in possession of the land was the record owner of an undivided interest in the larger tract, there is nothing in the nature of a parol partition to affect a person purchasing from a party to it without notice of its existence; and in the absence of notice, an innocent purchaser would be

entitled to hold what from the public records appeared to be the undivided interest of the cotenant whose estate he had purchased. See, also, Ebner v. Nall, Tex. Civ.App., 127 S.W.2d 506. The possession alone of the 49.5 acre tract by the plaintiffs was therefore not notice to Grogan Company of the existence of the attempted oral partition under these authorities.

On the question of limitation, the possession of the 49.5 acre tract by plaintiffs may have been adverse to the interests of George H., Henry W., and John A. Smith, three of the other descendants of Daniel and Nan Smith. According to the testimony, the Condras were living on the place at the time Mrs. Nan Smith died and three of the Smith brothers present at the time of the funeral agreed that they were to have the old home place for a home. This agreement or statement by the three brothers, George H., Henry W., and John A. Smith, is of importance here on the question of limitation, in that it operated as a full and complete notice to the three Smith brothers making the statement or agreement that thereafter the Condras' possession and use of the premises was under their claim of ownership outright for the 49.5 acre tract. It was at this point, as we view the evidence, that the change was made in the use and possession of the land by the Condras after the death of their grandmother, Mrs. Smith, from what their use and possession of the land had been before her death. As to the three Smith brothers, George H., Henry W., and John A., this statement operated as a disseisin of the three Smiths named, since it was a complete and unequivocal repudiation of the relationship of cotenancy between them and the Condras. Republic Production Co. v. Lee, 132 Tex. 254, 121 S.W.2d 973.

If the statute of limitation began to run against the three competent Smith brothers at the time such agreement was made, the operation of the statute was not affected by the conveyance by them to Grogan Manufacturing Company. Eastham v. Gibbs, 58 Tex.Civ.App. 627, 125 S. W. 372. Furthermore, under the authority of Collum v. Sanger Bros., by the Supreme

Court, 98 Tex. 162, 82 S.W. 459, 83 S.W. 184; Ramirez v. Smith, also by the Supreme Court, 94 Tex. 184, 59 S.W. 258 and Kelly Springfield Tire Co. v. Walker, Tex. Civ.App., 149 S.W.2d 195, the possession of the Condras was constructive notice to the Grogan Company as a purchaser from the three Smith brothers, of the full extent of the claims to the land being asserted by the Condras. If the statute of limitation therefore began to run against the Smiths at the time of the agreement with the Condras it continued to operate against the Grogan Company, the vendee of the three Smith brothers. We have considered carefully the apparent conflict between the rule announced in Collum v. Sanger Bros., supra, and the rule announced in Allday v. Whittaker, 66 Tex. 669, 1 S.W. 794. In deciding that the rule in Collum v. Sanger Bros., supra, is applicable here we have concluded that the conversation between the Smith brothers and the Condras must be eliminated entirely from consideration as an attempted partition, since it was in law no partition. It must be regarded as of significance in the evidence only as an act of disseisin of the three Smiths and the beginning point of a claim of complete ownership of their interest in the 49.5 acre tract by the Condras. The defendants argue that the possession of the plaintiffs was only by the permission of their uncles, and hence was not adverse to their uncles. We believe the evidence raises a fact question as to such possession. There is in the evidence the statement that the brothers agreed that "the Condras should have the home place"; that "they give Mr. Condra and his heirs the home place"; that "the Condra children should have the home place".

We do not agree with the contention of the plaintiffs that such disseisin and possession and use by the Condras ever became adverse as to Mrs. Jessie Davenport, the aunt of the Condras, or her children. As between her and the Condras the very fact which we have concluded from the evidence operated as a disseisin and notice of claim as to the Smith brothers is entirely lacking as to Mrs. Davenport and her heirs. They were not present at the time, knew nothing of the attempted agreement

and apparently never heard of it until this suit was filed.

We also disagree with the contention of plaintiffs that if Grogan Manufacturing Company legally acquired the interest of Willie Lee Smith, a non compos mentis, the statute of limitation began to run against it as regards such interest, from the date Grogan acquired it. Willie Lee Smith, of course, since he was a non compos mentis throughout his life time, could make no agreement to give the Condras the old home place for a home and he could not be charged with notice of any disseisin as against his interest by anything his brothers agreed to do. His interest was unaffected by any of these transactions. His interest was lawfully acquired by Grogan Manufacturing Company as we shall hereinafter point out. Limitation did not begin to run against Grogan as to this interest when Grogan bought it. The use and possession of his interest in the land by the Condras was still that of cotenants with him, as it was with Mrs. Davenport.

We believe, therefore, that the trial court was in error in its holding on the limitation questions, in holding that there was not sufficent evidence to be submitted to the jury. We believe that the evidence mentioned and quoted above was sufficient to raise a question of fact for the jury's determination of the plaintiffs' plea of limitation as to the interests of the three Smith brothers, George H., Henry W., and John A. Smith. We believe the trial court was correct, however, as to the interests of the Davenports and Willie Lee Smith.

The plaintiffs also complain of the action of the trial court in withdrawing the case from the jury, rather than instructing a verdict of the jury and cite the case of Kinsey v. Dutton, Tex.Civ.App., 100 S.W. 2d 1025. We believe this action of the court would not have been improper under the authority of the case of Rudco Oil & Gas Co. v. Gulf Oil Corp., Tex.Civ.App., 169 S.W.2d 791, if it would have been proper to instruct a verdict, and the point is overruled.

Defendants also have appealed, complaining of that portion of the judgment by which the trial court held that the guardian's deed of the interest of Willie Lee Smith to Grogan Manufacturing Company was void. The defendants' counterpoints Nos. 8, 9, 10 and 11 present this feature of the appeal and such points must be sustained. There was introduced in evidence by the plaintiffs portions of the probate docket of Liberty County in an effort to show affirmatively that George H. Smith was never appointed guardian of the estate of Willie Lee Smith, non compos mentis. They also introduced evidence to the effect that a diligent search of the probate records had been made and that the entries so appearing were the only ones the searchers could find. The evidence also shows that probate records had not been destroyed by fire or other calamity. From the records introduced there were apparently four separate causes in the probate court of Liberty County in which the lunacy or incompetency of Willie Lee Smith was considered. The causes were numbered on the docket 871 - 872 - 949 and 960. In No. 872 an order of sale was entered on December 7, 1926, in which the probate court found it proper that the sale of an undivided one-fifth (1/5th) interest in the 207 acre tract be made and George H. Smith as guardian was ordered to make the sale. Report of sale was duly made and an order confirming the sale was made by the court on January 14, 1927, in which order it is recited, "On this the 14th day of January, 1927, came on to be heard in the guardianship of Willie Lee Smith, a non compos mentis, etc." The docket sheet in said cause No. 872 shows a notation that on November 7, 1924, George Smith was appointed guardian of Willie Lee Smith; that on November 18, 1924, oath and bond were filed and approved, and other notations show the filing of an application for sale of the real estate, the filing and approval of inventory and appraisement and an order authorizing the guardian to sell the interest of minors in land. The defendants introduced in evidence the application of the guardian to sell, the order of sale, report of sale, the bond and the order of the court confirming and approving the sale. The guardian's deed was introduced by the plaintiffs for the purpose of

showing the common source of title. It is noted that the probate court docket showed entries in both causes Nos. 871 and 872. There is in the record an order entered in the County Court of Liberty County, Texas, adjudging Willie Lee Smith to be a person of unsound mind and ordering that George Smith may have the custody of the said Willie Lee Smith. The original order shows to be typewritten the cause No. 871, but the figure is written over in pencil and being in cause No. 872. The defendants point out that there was no proof that judgment was not entered in each of said causes, except that there was only one order to be found. Docket entries made by the probate court show two orders making appointment of guardian in causes Nos. 871 and 872. We believe that this evidence is not sufficient to show affirmatively that George H. Smith was never appointed guardian of the estate of Willie Lee Smith.

There is no proof that Grogan Manufacturing Company had any notice of any defect in the probate proceedings or that they did not pay an adequate consideration for the interest in the land purchased.

The County Clerk, who was the custodian of the records of the probate court, testified that many of the original papers of the probate office had been lost and that she had advertised requesting the lawyers to return to her office any and all papers they might have in their possession which had been filed in the probate court.

 It seems to be well settled that an innocent purchaser for value is not required to look beyond the order of the probate court ordering the sale by a guardian and the order of the court confirming such sale in order to determine whether or not such guardian has the authority to make such sale. In a collateral attack upon a guardian's deed, as is presented in the instant case, it must be remembered that the action of the probate court in recognizing George Smith as guardian of Willie Lee Smith or authorizing him to make the sale and in confirming said sale, creates a presumption of regularity far superior to any presumption which may arise concerning the actions of the clerk in entering properly in the minutes of the court all orders signed by the judge of the probate court. Dancy v. Stricklinge, 15 Tex. 557, 65 Am. Dec. 179; Frost v. Crockett, Tex.Civ.App., 109 S.W.2d 529; Carroll v. McLeod, 133 Tex. 571, 130 S.W.2d 277; Goolsby v. Bush, Tex.Civ.App., 172 S.W.2d 758; Burton v. McGuire, Tex.Com.App., 41 S.W.2d 238; Jones v. Sun Oil Co., 137 Tex. 353, 153 S.W.2d 571.

 We believe the trial court was in error in holding that the plaintiffs had proved that George H. Smith was never appointed guardian of Willie Lee Smith, non compos mentis, and that the guardian's deed to Grogan Manufacturing Company was void for that reason.

 The defendants also complain of the action of the trial court in permitting the witnesses Henry W. Smith and John A. Smith to testify in regard to the agreement made by themselves and their brother, George H. Smith, that the Condras could have the old Smith home place as a home after the death of Mrs. Nan Smith, the grandmother of the Condras. The testimony complained of is set out above in this opinion. The two witnesses, Henry W. Smith and John A. Smith, were two of the grantors who each conveyed to Grogan Manufacturing Company an undivided one-fifth (1/5th) interest in and to the entire 207 acres of land by general warranty deeds. On the trial of the case the trial court, over the objections of the defendants, permitted such witnesses to testify to the conversation and agreement. The defendants contend that such testimony by these witnesses was in disparagement of the deeds which they had given to Grogan. By the terms of the deeds undivided interests in the entire tract passed from them to Grogan. A grantor is not permitted by declaration or statements made by him after he has conveyed land to defeat or disparage the title that he has conveyed. Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226; Hooks v. Neill, Tex.Civ.App., 21 S.W.2d 532; Barnard v. Blum, 69 Tex. 608, 7 S.W. 98.

From the views we have expressed above as to the effect of these conversations, it is

seen that we do not believe that such conversations operated as a partition at all. The most that they could have done in behalf of the Condras, was to operate as a disseisin of the three Smith brothers and thus permit the statute of limitation to begin to run against them.

■ The existence of this agreement was of itself not sufficient to give title to the Condras by limitation. The continued use and claim thereafter was what they must depend on to perfect their title against the three Smiths and the Smiths' grantee, Grogan Manufacturing Company. The testimony of the two witnesses therefore was not in disparagement of the title which they conveyed to Grogan at the time the deeds were delivered to Grogan. At that time, the limitation title of the Condras had not matured, and in fact they had no title except what they had by limitation. They had possession and use under their claim against the three Smiths. At that time Grogan could have prevailed over their claim, even in the face of the statements and agreement. For these reasons we overrule the contentions of defendants under their twelfth point and hold that the trial court was not in error in permitting the two witnesses to testify to the conversations or agreement.

■ The defendants also complain of the action of the trial court in excluding from evidence certain rental division orders signed by the plaintiffs, which orders purported to designate the respective fractional interests in the 207 acre tract. The defendants contend that such orders were in the nature of declarations and admissions against the interests of the respective signers. Such instruments were also offered in impeachment of each respective signer. We believe such instruments were admissible and should have been received in evidence as admissions against the interests of the respective signers who testified as witnesses in the case. The statements contained in the instruments themselves were to some extent inconsistent with the testimony the witnesses had given upon the trial and with the claims made by them in their pleadings. We believe this to be true, even though such rental orders themselves show that they were for the sole purpose of controlling delay rentals and not for the purpose of a division order for the payment of any royalty. Admissions of parties are as a general rule admissible against them. See: McCormick & Ray, Texas Law of Evidence, 636–653; Warburton v. Wilkinson, Tex.Civ.App., 182 S.W. 711; Addison v. Ball, Tex.Civ.App., 262 S.W. 877.

That portion of the judgment of the District Court which held that the deed from George H. Smith, guardian of Willie Lee Smith, non compos mentis, to Grogan Manufacturing Company void and therefore awarded recovery of money in favor of plaintiffs against the defendants Morris Rauch, Harry Pulaski, Louis Pulaski, Floyd L. Karsten and Shell Oil Company, Inc., is reversed and rendered. That portion of the judgment of the District Court which awarded title to the plaintiffs of a 55/240 interest in and to the 49.5 acre tract of land sued for is reversed and remanded for a new trial and proceedings not inconsistent with this opinion.

The costs of this appeal are taxed one-half against the plaintiffs and one-half against the defendants.

## On Motions for Rehearing

Both parties have filed and orally presented extensive and able motions for rehearing. We write briefly thereon for the purpose of clarifying some of the holdings in the original opinion in this case.

We did not find as a fact nor hold as a matter of law that the Smiths and Condras referred to only the 31.7 acres enclosed by the old field fence, when they referred to "the old home place". We hold that the evidence was such that a fact issue was raised as to what portion of the entire tract was referred to by the Smiths and Condras when they referred to "the old home place".

In that portion of the opinion in which it is said that "there is no testimony that the Grogan Company or any of its agents had any actual knowledge or notice of any parol partition of the entire tract", we used the phrase "actual knowledge or notice" in the sense of express information, as opposed to

constructive notice. The evidence did not show that the Grogan Company had any knowledge of the partition agreement except such knowledge as the law imputed to it because of the plaintiffs' possession of the land at the time of Grogan's purchase.

We adhere to our belief expressed in the original opinion that the law as stated by the Supreme Court in Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459, 83 S.W. 184, applies to the facts of this case.

The motions of all parties for rehearing are overruled.